SECOND DISTRICT—MARCH, 1911.     309

Schlauder v. Chicago & Southern Traction Co., 160 Ill. App. 309.

## Hattie Schlauder, Appellee, v. Chicago & Southern Traction Company, Appellant.

### Gen. No. 5430.

1. NEGLIGENCE—*what does not affect actionable character of.* The fact that a railroad company may have been guilty of negligence which contributed to the injury complained of does not excuse a traction company from liability for its negligence likewise contributing to such injury.

2. NEGLIGENCE—*when traction company guilty of.* It is negligence for the servants of a traction company to go upon railroad tracks at a time when they know a passenger train is due with a car the propelling appliances of which are known to them to be out of order, and if the car remained stationary upon the track for some time before being struck it was likewise negligence for such servants not to warn the passengers to leave the same.

3. VARIANCE—*when objection for, comes too late.* An objection for variance not made in the trial court where an amendment might be made cannot afterwards be successfully interposed.

4. EVIDENCE—*as to what opinion of physician competent.* A physician who has attended an injured person from the time of the accident to the trial and who has testified to the injury suffered, may properly be permitted to give his opinion as to the permanency of such injuries.

5. INSTRUCTIONS—*when reference to declaration not erroneous.* It is not error to refer to the declaration in an instruction notwithstanding there is no evidence to support some one or more of the counts thereof.

6. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of an abstract proposition of law although correct in form will not reverse.

7. VERDICTS—*when not excessive. Held,* in an action on the case for personal injuries that a verdict for $6,000 is not excessive where there was evidence tending to show injury to the thigh, abdomen, and womb, with resulting hemorrhages and morbidity, and where the evidence tended to show in addition to pain and suffering that a permanent injury had been inflicted.

8. NEW TRIAL—*when newly discovered evidence not ground for.* Newly discovered evidence which merely goes to the amount of the damages does not require the awarding of a new trial.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. CHARLES B. CAMPBELL, Judge, pre-

siding. Heard in this court at the October term, 1910. Affirmed.
Opinion filed March 16, 1911.

LOWES & RICHARDS, for appellant; FREDERICK D. JORDAN, of counsel.

J. L. O'DONNELL, T. F. DONOVAN and J. A. BRAY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellant, the Chicago & Southern Traction Company, operates an interurban electric railway from 79th street, Chicago, to and beyond the village of Peotone, in Will county. Appellee, Mrs. Hattie Schlauder, was a passenger for hire going south on one of appellant's cars in the afternoon of August 30, 1909, from 79th street to Peotone, where she lived. Appellant's tracks crossed the line of the Grand Trunk Railroad something over a mile south of Blue Island, in Cook county. The car in which appellee was riding became stalled when upon the tracks of the Grand Trunk, and was struck by an east bound passenger train. Appellee was injured and brought this suit to recover damages therefor, and had a verdict and a judgment for $6,000 from which the company appeals.

Witnesses differed as to the length of time the car stood upon these tracks before it was struck. One witness seemed to say that at the time the interurban car stopped a passenger train of the Grand Trunk road, east bound, was then in sight, running rapidly and coming around a curve six or eight car lengths away or 700 or 800 feet away, while most witnesses testified that the car stood there from two or three to five minutes before it was struck by the train. No warning to passengers to leave the car was given until the train was near at hand. The engine struck the front end of the car, threw it off the tracks and swung it around upon the west bound track of the Grand

Trunk. The pilot of the engine was torn off and the steam cocks on that side, but the engine was brought to a stop at a distance from the car variously estimated at from fourteen to fifty feet. According to the great preponderance of the evidence, the seats in the ladies' compartment of the interurban car were all or nearly all occupied, and there were about thirty passengers therein, and, upon an alarm being given, they rushed toward the rear and when the car was struck they all went down, as one witness said, "like a mess of nine pins, all in a heap," although two witnesses for appellant testified that before the car was struck, every passenger had left it. Appellant contends (1) that it was not negligent; (2) that there is a variance between the proofs and the declaration as to the precise manner in which the appellee was hurt, and also that there was no "collision," as charged in the declaration, because the electric car was not in motion; (3) that the court erred in overruling an objection to a question to Dr. Banks; (4) that the court erred in giving certain instructions for appellee and (5) in refusing one instruction requested by appellant; (6) that the verdict is excessive; and (7) that a new trial should have been granted because of newly discovered evidence.

Appellant contends that it is a commercial railway (Bradley Mfg. Co. v. Chicago & Southern Traction Co., 229 Ill. 170) and therefore the Grand Trunk Railway was bound to stop its train 800 feet from this crossing and was negligent in not doing so, and that appellant's servants in charge of the interurban car had a right to assume that said passenger train would be stopped before reaching the crossing, and therefore appellant's servants were not negligent in their management of the car or in failing to notify the passengers to leave the car. If appellant was negligent, it is no defense to it that the Grand Trunk Railway Company was also negligent, and that the negligence of the latter contributed to the injury. Tebow v. Wiggins Ferry

312 APPELLATE COURTS OF ILLINOIS.

Schlauder v. Chicago & Southern Traction Co., 160 Ill. App. 309.

Co., 241 Ill. 582; C. & E. I. R. R. Co. v. Mochell, 193 Ill. 208, and cases there cited. Appellant argues the case here upon the assumption that the evidence is uncontradicted that before its servants in charge of the interurban car reached the Grand Trunk crossing, they stopped the car and the conductor went ahead and ascertained that the railway tracks were clear, and then gave the signal, and the motorman then started the car and went on. There is testimony to that effect, but the preponderance of the evidence is that the car was not stopped at all and that the conductor did not go ahead upon the tracks, but that the car ran immediately upon the tracks and the trolly there became detached. There seems to be testimony that the passenger train was then only six or eight car lengths away coming around a curve. If so, then appellant's servants were negligent in not stopping and ascertaining that the tracks were clear, under its own theory of the law. There was evidence tending to show that the apparatus by which the electricity was conveyed from the wire to the mechanical appliances whereby the car was moved, was out of order and had been so out of order when the car passed under the Rock Island Railroad viaduct in Blue Island, a mile or more away, and that the appliances acted there the same as they did when the car was upon this crossing, and that this was observed by the passengers and must have been known to the servants in charge of the car. There was proof that this passenger train and the interurban car running south at that place and time of the day were each due at this crossing at about the same time. If the jury believed this testimony, it would be warranted in finding appellant's servants guilty of negligence in going upon the Grand Trunk tracks when a passenger train was due, with a car the propelling appliances of which were known to them to be out of order. If the car was upon the crossing for from three to five minutes the jury might well

find appellant's servants guilty of negligence in not warning the passengers to leave the car. There are other respects in which the jury might find from the evidence that appellant's servants were negligent. The verdict is that they were negligent. The proof would not warrant us in disturbing that conclusion.

The declaration consisted of one original count and four additional counts. The first count charged that appellee was thrown with violence from said car outside and into a certain vestibule in said car. The first additional count charged that she was thrown with violence upon and against the door, entrance and vestibule of the car in which she was riding. The second additional count charged that she was thrown with violence from said car into the vestibule of said car. The third additional count charged that she was thrown with violence from and out of said car into a certain vestibule of said car, and the fourth additional count charged that she was thrown with violence against the end seats and doors of said car. It is argued that there is a variance between these allegations and the proof. No witness knew exactly what happened to appellee. When the alarm was given to get out of the car there was a rush of passengers for the rear door. Appellee testified that she thought she was still inside the car door when the train struck the car. Her husband found her shortly thereafter in the vestibule underneath five other women, unconscious and with her head and shoulders jammed down into a corner of the vestibule. We are of opinion that this evidence was not variant from the declaration; and also that as no objection to the proof was made on the ground of variance at the trial, when the declaration could have been amended, such objection could not afterwards be successfully interposed. Reavely v. Harris, 239 Ill. 526; Parmelee Co. v. Wheelock, 224 Ill. 194; City of Chicago v. Bork, 227 Ill. 60. Each count of the declaration charged a collision between the railroad train and the interurban car, and it is contended

that there cannot be a collision between two bodies if one of them is stationary. We think this point far-fetched, and it was not raised during the trial. Moreover, the original count charged that appellant negligently permitted its car to stand on the railroad track and not only to come into collision, but also to come in contact, with the railroad train. The third additional count charged that the interurban car not only came into collision with, but also was struck by, the locomotive and came into contact with the passenger train. The fourth additional count also charged that the interurban car was struck by the passenger train as well as that it came into collision therewith. The fireman testified that there was a collision between his engine and the electric car. The judgment should not be reversed because of any variance pointed out by appellant.

Dr. Banks was the physician who attended appellee from the time of her injury to the time of the trial, and after he had testified at length to the character of her injuries, and that, in the absence of certain other conditions which he testified did not exist, the injuries from which appellee suffered were in his opinion due to traumatism, or some force or blow, he was asked by appellee's counsel "Have you an opinion whether or not Mrs. Schlauder is or is not permanently injured as a result of that accident?" He answered that he had, and was then asked what that opinion was, and answered, "I think she is permanently injured." It is argued that the court erred in overruling objections to these questions. We think they were competent, under the principles laid down in Fuhry v. Chicago City Ry. Co., 239 Ill. 548; People v. Hagenow, 236 Ill. 514; Chicago Union Traction Co. v. Roberts, 229 Ill. 481; and City of Chicago v. Didier, 227 Ill. 571. In the Roberts case *supra,* it was held competent to ask a physician whether in his opinion a condition testified to was permanent. To the same effect is Hirsch v.

Chicago Consolidated Traction Co., 146 Ill. App. 501. The law allows a recovery for the permanency of injuries, and that must usually be a matter of opinion only, and when it is a medical question experts are permitted to give such opinion.

The second, third and fourth instructions, given at the request of appellee, submitted to the jury the question whether plaintiff had proven the allegations in one or more counts of the declaration by a preponderance of the evidence. It is contended that there was no proof to support the charges of negligence contained in the second and third additional counts, and that therefore it was error to give these instructions, under North Chicago St. Ry. Co. v. Polkey, 203 Ill. 225. Without extending this opinion by a detailed statement of the charges contained in the several counts of the declaration, we are of opinion that there is evidence tending to support each count of the declaration. The second additional count is framed upon Chicago City Ry. Co. v. Jennings, 157 Ill. 274, which case has often since been approved. The third additional count is supported by the testimony of the passenger who saw the Grand Trunk train approaching as the interurban car went upon the railroad tracks. The reference to the declaration in these instructions, regardless of whether there was any evidence fairly tending to support these two counts, is supported by U. S. Brewing Co. v. Stoltenberg, 211 Ill. 531; Terra Cotta Lumber Co. v. Hanley, 214 Ill. 243; C. & J. El. Ry. Co. v. Patton, 219 Ill. 214; North Chicago St. Ry. Co. v. Aufmann, 221 Ill. 614; Kirk & Co. v. Jajko, 224 Ill. 338; Chicago City Ry. Co. v. Foster, 226 Ill. 288; and by a large number of earlier cases cited in those opinions. In Chicago City Ry. Co. v. Foster, *supra,* it was expressly held that such instructions were proper, even if there was no evidence tending to support some of the counts, and the Polkey case, *supra,* was there distinguished.

It is argued that the court erred in refusing the following instruction, requested by appellant:

"The court instructs the jury as a matter of law that as to the rights of trains at or approaching a crossing, that the train, be it passenger or freight, which first reaches it, makes the required stop within the required distance of the crossing, and from such stop gets first in motion, has the right to the crossing."

This was but an abstract proposition of law and it was therefore not error to refuse it. It was substantially embodied in the 18th instruction given at appellant's request, and the court could not be required to duplicate the proposition. It was calculated to mislead the jury into believing that if the Grand Trunk Railroad Company was negligent, then appellant was excused, even if it also was negligent and the negligence of both contributed to the injury. It was not error to refuse the instruction.

It is contended that the verdict is excessive. Appellee received some blow upon the right thigh, and it became badly swollen and discolored and sore and painful and so remained for a number of weeks. Appellant contends that that was the only result of this accident to appellee. She was attended continuously from the day of the accident to the day of the trial by Dr. Banks, a physician and surgeon of eighteen years' experience. He began his treatment the morning after the accident. Besides the bruise upon the thigh, he found great soreness over the lower part of the abdomen. He knew that there was great soreness there, not only by what she said, but also from the way in which she flinched at his examination. After she reached home on the night of the accident, a hemorrhage set in from the vagina or the womb, and she testified that her period of menstruation had been passed about a week. This hemorrhage continued for about ten days. When Dr. Banks was able to make a vaginal examination he found a great deal of swelling, tenderness and inflammation of the uterus and other

female organs; that there was suppression of urine, constipation and stomach trouble. She became depressed, morbid, melancholy and hysterical. These conditions continued till the time of the trial. She had spells when she would have a sense of suffocation, a choking sensation, when she suffered for want of breath and could not bear the pressure of her clothing and had to be fanned. She had palpitation of the heart very frequently. Her pulse would run high, and there would be rigidity in her muscles. The tenderness in the pelvic regions and in the female organs and over the ovaries and the swollen condition of the uterus continued till the time of the trial. She suffered from a loss of memory, from morbidness, brooding, worrying and fear that some calamity would happen. When talking she would lose the thread of the subject. The proof shows that her symptoms are indicative of incipient insanity. Another physician and surgeon of twenty-eight years' experience examined her two days before she testified. He found inflammation of the female organs, and said that that condition could be produced by trauma or violence. He found patches on the thigh and legs where sensation was lost or greatly impaired, and declared that she could not deceive him in that respect. He found over-sensitiveness in her breast. He found that the surface over the spine for the whole length of it was extremely sensitive, and gave it as his opinion (without any objection being interposed,) that she was permanently injured about the pelvic region. He testified that she had enlargement and inflammation of the uterus, and inflammation of the ovaries and Fallopian tubes, and that, if those conditions had been caused by disease, there would have been other conditions which were absent in her case; and that the conditions which he found could have been caused by violence. Appellee was thirty-seven years of age when she testified, and was the mother of two children, the younger of whom was thirteen years old

318    APPELLATE COURTS OF ILLINOIS.

Schlauder v. Chicago & Southern Traction Co., 160 Ill. App. 309.

and the older seventeen. The testimony of herself and her husband shows that before marriage she had obtained a musical education, and after her marriage had taught music to a considerable extent, and had also done considerable special needle work, and had been able to earn thereby a considerable sum each year, besides doing her ordinary household work without the aid of a servant, having as her family, her husband, two children and a brother; that because of this injury she had been unable since then to give lessons in music, to perform needle work, or to discharge many of her household duties. At the time of the trial she was still feeble, had little appetite, suffered pain, had nervous spells, insomnia, melancholia and hysteria; and her condition is likely to be permanent. She is still under the care of a physician. She was in good health when this accident occurred. Appellant called medical experts who testified that it was impossible that such injuries as she received in this car could have produced the disorders to the female organs which her attending physician testified that he found. The extent of her injuries, and what would be a fair compensation therefor, were questions for the jury under the evidence. The jurors and the trial judge saw appellee upon the witness stand and could determine far better than we what her real physical condition was at the time of the trial. We do not consider that the proof authorizes us to disturb a verdict which has the approval of the trial judge.

Appellant contends that a new trial should have been granted because of the newly discovered evidence set forth in the affidavit of Dr. Cox, filed therewith. Appellee and her husband had testified that she had never had any serious illness or disorder since her marriage, except an occasional cold and the usual incidents of childbirth. The affidavit of Dr. Cox, now of Chicago, shows that he practiced medicine in Peotone from 1903 to 1909 and that from February 8, 1904, to June 28, 1904, he treated appellee for head aches, pain in the

back, constipation, marked nervousness, dizziness, leucorrhoea, dysmenorrhoea, and for a retroverted and prolapsed uterus, freely movable; and that he furnished her medicine on November 13, 1904. It will be assumed that upon the motion for a new trial appellant sufficiently showed that it exercised reasonable diligence and failed to find this proof before the trial. Appellant contends that a new trial should be awarded in order that it may produce this witness. To entitle a party to a new trial because of newly discovered evidence it must be material to the issues and controlling and practically conclusive. Plumb v. Campbell, 139 Ill. 101; Conlan v. Mead, 172 Ill. 13; Springer v. Schultz, 205 Ill. 144. It is not sufficient that it tends to impeach a witness. C. & E. I. R. R. Co. v. Stewart, 203 Ill. 223. It is not sufficient that it tends to mitigate the damages (Schlencker v. Risley, 3 Scam. 483; Chicago City Ry. Co. v. Bohnow, 108 Ill. App. 346), unless, indeed, it is practically conclusive that merely nominal or slight damages should have been recovered, instead of the heavy damages awarded. The testimony of Dr. Cox would have no tendency to show that appellee was not entitled to recover. It would only relate to the measure of damages. As Dr. Cox ceased to treat appellee on June 28, 1904, and remained practicing in Peotone till 1909, and as his affidavit does not state that these disorders still existed when he ceased treating her, the presumption must be that appellee recovered under his treatment. This evidence tends to show that appellee and her husband were not correct in testifying that she had always been in good health since her marriage, but it is entirely consistent with this affidavit, and a reasonable presumption from it, that she fully and entirely recovered from these ailments in 1904, and had been in sound health for five years when this accident occurred. If this affidavit by Dr. Cox is strictly true, then it may well be that appellee would more easily have a recurrence of those

disorders, upon being subjected to such injuries as she received in this railroad wreck, but that would have no tendency to diminish the damages which a jury should award her. People in delicate health are just as much entitled to protection when traveling as passengers as are those of robust constitution, and, if injured by the negligence of a common carrier, they are entitled to recover compensation for all the sufferings inflicted upon them thereby, although those sufferings may be greater than if up to that time they had always been in sound health. So far as we can see, the evidence of Dr. Cox at another trial would have no tendency to diminish the damages which plaintiff would be entitled to recover, though it might explain how it came that she suffered so greatly from the injuries received in this wreck, and might remove the theories of appellant's expert physicians that it was impossible that her female organism should have been so affected by the injuries which she received. Certainly the newly discovered evidence contained nothing conclusive or controlling upon any issue in this case. We conclude that the court did not err in overruling the motion for a new trial on the ground of newly discovered evidence.

The judgment is therefore affirmed.

*Affirmed.*