## John F. O'Malley, Appellee, v. Illinois Publishing and Printing Company, Appellant.

### Gen. No. 20,264.

1. LIBEL AND SLANDER, § 142*—*what evidence inadmissible on plea of justification.* Where a libel charged plaintiff with being the head of an organization for the colonization of illegal voters, and a plea of justification in the resulting action for libel charged plaintiff with procuring illegal votes to be cast at a named election, evidence of plaintiff's acts at an election other than that named in the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

O'Malley v. Illinois Publishing and Printing Co., 194 Ill. App. 544.

plea is incompetent, as having no tendency either to prove the truth of the charge or to sustain the plea, for the reason that, since the law requires the plea to be as broad as the charge, the evidence offered under the plea, to be competent, must suffice to prove the truth of the charge.

2. LIBEL AND SLANDER, § 104*—*when plea of justification bad.* A plea which attempts to justify a libel without alleging facts sufficient to establish the truth of the charge will be held bad on demurrer.

3. LIBEL AND SLANDER, § 140*—*when hearsay inadmissible.* Where a libel charged plaintiff with being the "head of an organization for colonizing illegal voters," and "one of the most notorious gambling bosses Chicago ever had," hearsay testimony not tending to connect plaintiff with the incidents testified to, which were far remote from the date when the libel charged plaintiff with being guilty of the acts named, is incompetent as having no tendency either to sustain a plea of justification or in mitigation of damages, and *held* not error to strike from the record a deposition containing such testimony.

4. EVIDENCE, § 223*—*when hearsay.* Testimony offered as tending to prove an event which occurred in the absence of the witness, and of which he admittedly had no knowledge, *held* properly excluded, for the reason that such testimony is pure hearsay, and therefore incompetent.

5. LIBEL AND SLANDER, § 163*—*when instruction to find defendant guilty, proper.* In an action for libel, where defendant failed in two important respects to sustain its plea of justification, *held* not error to instruct the jury to find defendant guilty, for the reason that such failure entitles plaintiff to such a verdict, provided proper instructions were also given leaving to the jury the questions of mitigation of damages and the good faith and justifiable ends of defendant in publishing the libel, as well as defining the measure of damages, and limiting recovery to such parts of the libel as were unproved, if any.

6. LIBEL AND SLANDER, § 140*—*when evidence showing suspicion of guilt inadmissible in mitigation.* In an action for libel, evidence tending to cast suspicion of guilt on plaintiff is incompetent in mitigation of damages, where such evidence is offered to justify the truth of the libel, and failed to accomplish its purpose.

7. LIBEL AND SLANDER, § 63*—*when publication upon information from others no defense.* It is no defense in an action of libel that the publication of the libel was predicated upon information from others, where nothing is known as to the truth or falsity of the charge, except as indicated by such information, for the reason that conversations with third parties which bear on such truth or falsity, had in the absence of plaintiff, are incompetent.

8. **Libel and slander**, § 105*—*what is effect of plea of justification*. In an action for libel, a plea of justification is in law a republication of the libel.

9. **Libel and slander**, § 107*—*what is effect of plea of not guilty*. In an action for libel, a plea of not guilty admits the falsity of the charge.

10. **Libel and slander**, § 77*—*what competent in aggravation of damages*. In an action for libel, evidence of a second publication of the libel by defendant, emphasizing the first and ridiculing plaintiff, is competent in aggravation of damages, for the reason that the second publication tended to show malice in the publication of the original libel.

11. **Libel and slander**, § 156*—*when verdict not excessive*. Where defendant, the publisher of a newspaper of wide circulation and large admitted wealth, failed in two important particulars to sustain its plea of justification of a libel published in its newspaper, which charged plaintiff with serious crimes, as well as with being a saloon and dive keeper, and one of the most notorious gambling bosses Chicago ever had, and where there was a second publication by the newspaper of the libel, emphasizing the first and ridiculing plaintiff, without making a retraction, or expressing regret, or seeking to exonerate plaintiff from the aspersions cast on him by the libel, *held* that a verdict of $7,500 for plaintiff was not excessive, though plaintiff was admittedly a saloon keeper and a gambler.

12. **Libel and slander**, § 148*—*when loss of sleep is an element of damages*. In an action for libel, where the words of the libel are actionable *per se*, plaintiff's loss of sleep, due to the publication of the libel, is a proper element of damages.

13. **Libel and slander**, § 148*—*when plaintiff's family relations may be considered*. In an action for libel, plaintiff's family relations may be considered.

14. **Libel and slander**, § 152*—*when punitive damages may be awarded*. In an action for libel, where the words of the libel are actionable *per se*, and where malice is proved, plaintiff is entitled to punitive damages without proof of actual damages, where such damages are inconsequential, for the reason that under such circumstances a proper foundation for punitive damages is laid without such proof.

15. **Libel and slander**, § 148*—*when circulation and wealth of defendant may be considered*. In an action for libel, where the libel is published by a newspaper, the facts that the newspaper had a large circulation and was admittedly wealthy are properly considered.

16. **Appeal and error**, § 1782*—*what essential to reversal for excessive damages*. A judgment will be set aside on the ground of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

O'Malley v. Illinois Publishing and Printing Co., 194 Ill. App. 544.

excessive damages only where it appears that the excess was due to the prejudice and passion of the jury.

17. NEW TRIAL, § 77*—*what essential on application on ground of newly-discovered evidence.* On a motion for a new trial on the ground of newly-discovered evidence, the material point is whether the evidence in the affidavits filed in support of the motion could have been procured for use at the trial by the exercise of due diligence, and not merely whether such evidence in fact came to the knowledge of the party making the motion, after the trial.

18. NEW TRIAL, § 79*—*when due diligence in procuring evidence not shown.* On a motion for a new trial on the ground of newly-discovered evidence, where the sources from which such newly-discovered evidence were available to defendant equally before as after the trial, of which defendant makes no use until after the trial, defendant is guilty of such a want of due diligence as will prevent the court from granting the motion.

19. NEW TRIAL, § 79*—*when court may consider facts alleged in application for continuance.* On a motion for a new trial on the ground of newly-discovered evidence, where one of the principal affidavits is by the attorney for defendant, the trial judge, in weighing the probative force of the affidavits, is warranted in considering, the fact that before the trial a continuance was granted on the faith of an affidavit by the same attorney, alleging that certain named persons were necessary witnesses at the trial, and the further fact that none of the persons were in fact called as witnesses at the trial, and in concluding from the coincidence of the two facts that the affiant was oversanguine, and that at a new trial, if granted, the new evidence alleged might not have appeared.

20. NEW TRIAL, § 71*—*when evidence in mitigation of damages not ground for.* Where a trial resulting in a judgment is fairly had, a motion for a new trial will be granted only where the affidavits make a strong case, showing evidence not merely cumulative but controlling, and practically conclusive, as well as material to the issues, or where such evidence is practically conclusive that nominal instead of substantial damages should have been recovered, as it is not enough to support such a motion that the newly-discovered evidence merely tends to mitigate damages.

Appeal from the Circuit Court of Cook county; the Hon. ED-WARD M. MANGAN, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed October 5, 1915. Rehearing denied October 18, 1915. *Certiorari* denied by Supreme Court (making opinion final).

ROY D. KEEHN, for appellant; EDWARD G. WOODS, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

JOSEPH B. DAVID, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Defendant is the owner and publisher of a newspaper in Chicago called the "Chicago Examiner," in which it published, on November 24, 1911, an article of and concerning the plaintiff, and he, regarding it as libelous, commenced this suit for damages.

The article complained about was published under the headlines in large bold type: "Sullivan Bipartizan Gang in Vice Net. Police Graft Under Busse and Dunne to be Bared," and the offending words declared upon in the declaration are encompassed in the following: "John F. O'Malley, Saloon and Divekeeper, One of the Most Notorious Gambling Bosses Chicago Ever Had, Accused of Being Head of an Organization for Colonizing Illegal Voters, and Known as the North Side Representative of the Graft Ring of the Busse and Former Administrations." The declaration consisted of three counts originally filed and two additional counts afterwards filed by leave of court, in which, in varying forms, the article was alleged to be libelous in four particulars: (1) That it charged that plaintiff was a saloon and divekeeper; (2) that he was one of the most notorious gambling bosses Chicago ever had; (3) that he was accused of being head of an organization for colonizing illegal voters; (4) that he was known as the North Side representative of the graft ring of the Busse and former administrations. To this declaration defendant interposed two pleas, the general issue and a plea of justification, and plaintiff to these pleas filed the *similiter* and the replication *de injuria*. On the issue thus formed the cause went to trial before court and jury, resulting in a verdict and judgment for $7,500, and defendant prosecutes this appeal, assigning numerous errors, which will be here

disposed of under the designation of: (1) Errors of
the trial court in its rulings upon the admissibility of
evidence; (2) error in the giving and refusing to give
certain instructions; (3) that the damages awarded
are excessive; (4) that a new trial should have been
granted for newly-discovered evidence.

The plea of justification justified as to the whole of
the libel charged in the declaration, concluding with
the averment that the defendant did, on the day in
plaintiff's declaration and each and every count there-
of mentioned, publish the said words of and concern-
ing the plaintiff in the said declaration and each and
every count therein contained, as it lawfully might do,
for the cause aforesaid, with good motives and for jus-
tifiable ends, etc.

The evidence developed much of the underworld life
in Chicago. Plaintiff was the keeper of a well-known
if not a notorious, saloon at Kinzie and Clark streets,
where persons of all kinds and characters resorted. A
keeper of a house of prostitution was a witness for de-
fendant, several penitentiary convictions of persons
testifying were put in evidence, and a witness named
Robinson, who, defendant claimed, was in possession
of valuable and material testimony, was said to be in
the penitentiary at Stillwater, Minnesota. A witness
named Sims was said to be an ex-convict. Policemen,
detectives and ex-policemen also figured as witnesses.

The direct evidence on the part of plaintiff consisted
of two stipulations, in which the defendant admitted
its ownership of the "Chicago Examiner" and that its
circulation on the date of the publication of the alleged
libelous article was not less than 175,000 copies daily,
and that the defendant corporation was worth not less
than a half a million dollars over and above all its lia-
bilities.

Two witnesses testified to purchasing the paper con-
taining the article, which was read in evidence, and al-
so a copy of the "Examiner" of December 12, 1911,

containing the article, "O'Malley Awfully Hurt," which was likewise read in evidence.

Plaintiff himself testified to his residence in Chicago; that he was married and had a wife and a daughter eight years of age; that he was in the railway supply business and had been for five years, and that for thirteen years previous to that time he was in the saloon business at the northeast corner of Clark and Kinzie streets, which he abandoned in June, 1912; that he was a native born Chicagoan, educated here, was elected supervisor twice, state senator once, and a member of the General Assembly for one term, and had been a clerk in the city attorney's office; that he was a Democrat; that he had read the article in the "Chicago Examiner" set out in the declaration on the morning it was published; that the effect of the article caused him loss of sleep, that he was worried, and that the sleeplessness continued for about a week; that he also read the article, "O'Malley Awfully Hurt." This article is as follows:

"O'MALLEY AWFULLY HURT; NORTH SIDE VICE BOSS FINDS IT'S A HARD, CRUEL WORLD. This is a cold, cruel, wicked world. If you don't believe it ask John F. O'Malley. He will also tell you that the Examiner is a cold, cruel newspaper. Incidentally he may mention that he has brought suit for $100,000 damages against the Examiner, alleging libel. Yes, indeed, his feelings have been hurt. Hurt? Why, they've been lacerated. Some time ago the Examiner described him as a 'saloon and divekeeper, one of the most notorious gambling bosses Chicago ever had; accused him of being head of an organization for colonizing illegal voters, and known as the North Side representative of the graft ring of the Busse and former administrations.' And just for that he says he has been libeled. Who'd have thought it?"

This was all the evidence in chief. Defendant, under its plea of justification, tendered as a witness the reporter who wrote the article complained about. His

testimony was almost entirely of a hearsay character, including what other people had told him, of the articles he had read in newspapers in Chicago involving O'Malley, and that he believed the offending article to be true.

The clippings referred to by this witness were offered and received in evidence on the part of defendant, they being the clippings so received as tending to show good faith and want of malice on the part of defendant in making the publication, and in mitigation of damages.

To support the plea of justification there were numerous witnesses, consisting of bartenders, policemen, retired policemen, detectives and a lawyer; they testified to, among other things, matters occurring at dates remote from the date of publication of the libelous article in question. They also testified as to the many kinds of persons who visited O'Malley's saloon, and as to O'Malley's playing poker in the Richmond House.

The deposition of Gerard Fuller tended to show that O'Malley gambled in the Richmond House; that at an election held in the fall of 1908, one Nelson gave him a dollar to cast an illegal vote, and that prior thereto plaintiff had given Nelson $50 in money. The whole of the Fuller deposition was excluded on the motion of plaintiff's attorney.

One William B. McCormick, a newspaper man, testified that at an aldermanic election in April, 1910, he had a conversation with one William Gloor with reference to voting, and after objection to some of his testimony, counsel for defendant offered to prove that at the spring election of 1910, McCormick, while at a polling place, was approached by a man named Gloor, who requested him to vote; that after stating to the man that he had no right to vote, the man said it didn't make any difference, or words to that effect; that thereupon the witness went with Gloor to the plaintiff,

John F. O'Malley, who was standing near the polling place, and that O'Malley handed to the witness a card on which was the picture of the aldermanic candidate, one Clettenburg, with the words, "Vote for Clettenburg" and two ruled lines, and that on the ruled lines was written, "John Delaney, 414 West Indiana Street;" that when the card was handed to the witness he was told that was the name under which he was to vote; that witness went to the polling place and there showed the card to one Bauler, with whom he had gone to the polling place; that Gloor saw what had occurred and tried to get the card away from the witness, who went away carrying the card with him.

On objection of counsel for plaintiff, the testimony of McCormick was stricken out and the offer of further proof by him refused.

One Lizzie Ferneke testified for defendant that she kept a disreputable hotel in 1908 and 1909 at 172 North Clark street; that Lieutenant Ambrose called on her and after a conversation with him she went to see O'Malley, and that upon four occasions after that, once in each month, she gave O'Malley an envelope containing $50, during which time neither she nor her disreputable establishment was disturbed. The testimony of this witness was categorically denied by plaintiff in his rebuttal.

The husband of Mrs. Ferneke testified in contradiction to many matters to which she testified.

FIRST: We have read with care the evidence admitted and refused and, in the light of the pleadings, we are unable to say that any reversible error was committed by the court, either in its admission or refusal to admit evidence. The testimony of McCormick was clearly inadmissible. It in no way tended to prove the charge that O'Malley was, at or about the time of the publication of the libelous article, the head of an organization for colonizing illegal voters, nor did it sustain the plea of justification in any other particular.

McCormick's testimony related to an aldermanic election in April, 1910, but the plea of justification charged that it was at the April election of 1911 that plaintiff procured illegal votes to be cast. The law required the plea to be as broad as the charge, and the evidence, to be competent, must be sufficient to establish the truth of the charge.

If such evidence had been set up by plea, it would have been held bad on demurrer. *Brown v. Burnett,* 10 Ill. App. 279; *Bingham v. Gaynor,* 203 N. Y. 27.

It cannot be said that McCormick's evidence and what was proposed to be further proved by him tended to justify the libel; neither would it maintain the plea of justification. In the following cases proving less than was charged was held to be insufficient:

In *Clarkson v. Lawson,* 6 Bing. 266, it was charged that a proctor had been suspended from his office three times, twice by Sir J. Nicholl and once by Lord Stowell, but in the plea of justification one suspension only was averred.

*Bishop v. Latimer,* 4 L. T. N. S. 775, was a libel impugning the plaintiff's character as an attorney. The libel was in general terms, "How Lawyer Bishop Treats His Clients." A plea justifying the aspersion by citing one instance of ill treatment in a particular case was held insufficient to sustain the implied charge in the libel that he so treats his clients generally.

*Wakley v. Cooke,* 4 Ex. Ct. 511, was a libel charging the plaintiff with being a "libelous journalist." Proof offered under a plea of justification that the plaintiff had libeled one man, who had sued him and recovered, did not justify the general charge.

*Dowie v. Priddle,* 216 Ill. 553, adheres to the doctrine announced in cases cited.

McCormick's testimony given and proffered did not tend to prove the truth of the charge that the plaintiff was the "head of an organization for colonizing illegal voters." As McCormick's testimony was not prof-

fered in mitigation of damages, it is not necessary to decide as to its admissibility for such purpose.

It was not error to strike out the deposition of Fuller, as his testimony was clearly hearsay and in no view which can be taken of it did it connect O'Malley with any of the incidents about which he testified. Nor can it be said that Fuller's deposition tended to support the charge that plaintiff was the "head of an organization for colonizing illegal voters" or the charge that plaintiff was "one of the most notorious gambling bosses Chicago ever had." And further, the incidents testified about were all far remote from the date when the words published inferably charged plaintiff with being guilty of the acts constituting the libel. Neither was his testimony admissible in mitigation of damages, nor was it so proffered.

The testimony of Schubert was properly excluded, as he was not present at the time of the occurrence about which he testified, and the fact that Mike Crow called plaintiff on the telephone was purely hearsay, as the witness admittedly had no knowledge as to who answered Crow's telephone call.

Second: The instructions as a whole presented the case more favorably for defendant than the law warrants. The court instructed the jury to find a verdict against the defendant, but the question of damages was left to the jury under suitable instructions defining the measure of damages plaintiff was entitled to recover and limiting such recovery to so much, if any, of the words published which had not been justified by proof.

The instruction to find defendant guilty was without error, as defendant had failed in two essential particulars to sustain its plea of justification, namely, that plaintiff was the "head of an organization for colonizing illegal voters" and that he was known as "the North Side representative of the graft ring of the Busse and former administrations." The evidence of defendant both given and proffered completely failed

to sustain either of these charges.   Neither can we find in this record any evidence establishing that there was any so-called graft ring in the Busse or former administrations—referring to Busse as one-time Mayor of Chicago and to municipal executives who preceded him.   Defendant's failure in these particulars to prove its plea of justification entitled plaintiff to a verdict in his favor, leaving to the jury for their determination, as was done by appropriate instructions, the questions of circumstances which might tend to mitigate the damages to be awarded and whether the libel was published in good faith and for justifiable ends.

The evidence claimed to be proper to be considered in mitigation of damages violated the rule that evidence tending to cast suspicion of guilt upon the party libeled  cannot be considered by the jury in mitigation of damages.   Such evidence was all aimed at an attempt to justify the truth of the libel, and consequently failed of its intended purpose.   *Spolek Denni Hlasatel v. Hoffman,* 204 Ill. 532.

And it was said in *Stephens v. Commercial-News Co.,* 164 Ill. App. 6:

"It is no defense to an action of libel to show that the publication was predicated upon information obtained from the chief of police and others at the police station and that at the time of the publication and afterwards nothing was known with respect to the truth or falsity of the publication, except as indicated from the information thus obtained, and conversations had with third parties out of the presence of the plaintiff which bear upon the truth or falsity of the publication made, are incompetent."

THIRD:   The damages are not excessive in our judgment for a libel of so serious a nature.   Its republication was malicious and vindictive.   Not only were the libelous words repeated, but emphasized, and plaintiff ridiculed.   The plea of justification was in law a fur-

ther republication of the libel and the plea of not guilty admitted the falsity of the charge. While plaintiff was a saloon keeper and admittedly a gambler, it was not proved that he kept what is known as a "dive," nor was there any evidence that he was guilty of the other two charges. The repetition of the libel tended to show malice in the publication of the original libel, and these republications were proper for the jury to take into consideration in aggravation of damages. *Ransom v. McCurley*, 140 Ill. 626.

The words of the libel were actionable *per se*, and the fact that the publishing of the libel so disturbed plaintiff that he could not sleep at night was a proper element to be taken into consideration by the jury in awarding actual damages. *Rea v. Harrington*, 58 Vt. 181; *Cahill v. Murphy*, 94 Cal. 29.

In assessing damages, it was proper for the jury to consider the plaintiff's family relationship, and as said in *Adams v. Smith*, 58 Ill. 417: "We have no doubt, where words spoken are actionable *per se*, that the mental suffering produced by the utterance of the slanderous words is a proper element to be considered in fixing the amount of damages." As the words were libelous *per se*, a sufficient foundation for the recovery of punitive damages was laid. *Hintz v. Graupner*, 138 Ill. 158.

While we regard the actual damage suffered by plaintiff as inconsequential, the words being actionable *per se* and malice being abundantly proven, it was not necessary to prove any actual damage to entitle plaintiff to recover punitive damages. We are satisfied, in view of the vindictiveness of defendant's actions, as evidenced by its malicious repetition of the libel, that the damages assessed were quite within bounds. Moreover, we fail to find any circumstances in defendant's evidence warranting the jury in minimizing the damages, for we fail to find in this record any apology or expression of regret on the part of defendant at the

publication of the libel.  From first to last defendant maintained the truth of the publication and that it was published in good faith and for justifiable ends.  Nowhere has defendant sought to exonerate in any degree the plaintiff from the aspersions cast upon him by the publication of the libelous article.  The wide circulation of defendant's newspaper, the ''Examiner,'' in which the libel was published, and the admitted wealth of defendant, were elements proper to be taken into consideration by the jury in awarding plaintiff damages, and these elements justify the amount of the verdict.

In no case will a judgment be disturbed on review on the ground of excessive damages, unless it clearly appears that the damages awarded are the result of prejudice and passion on the part of the jury.  We are unable to say from this record that any taint of prejudice or passion on the part of the jury is discernible.

FOURTH:  As to the refusal of the trial court to grant a new trial on the grounds of newly-discovered evidence.

We find nothing in the affidavits presented regarding newly-discovered evidence which shows that defendant used due diligence to procure the witnesses named, or their testimony by way of deposition, for use upon the trial of the cause.  Robinson was said to be a convict in the penitentiary at Stillwater, Minnesota, and his deposition presumably could have been taken.  The material point is not that the testimony discovered came to the knowledge of defendant after the trial, but, could such evidence have been procured for use upon the trial by the exercise of due diligence. It is evident that the same agencies which discovered such evidence after the trial were just as available to defendant before the trial.

It is a strong case that will warrant a court of review in reversing the judgment of a trial fairly had on the ground of newly-discovered evidence.  The evidence

said to be newly-discovered does not appeal to us as being at all of a conclusive character, but merely of a cumulative nature.

In weighing the probative force of the affidavits presented concerning the newly-discovered evidence, the court was justified in taking into consideration, if it did, the facts that the principal affidavit was made by the attorney for defendant here and in the trial court, and that in an affidavit made by the same attorney in the trial court for a continuance, in the faith of the verity of which a continuance was granted, the names of several persons (among which was that of United States Senator Sherman of Illinois) were set forth as necessary witnesses on the part of defendant in the trial of the cause, and that on the trial not one of them was called upon to testify. The trial judge might well have concluded, from these coincidences, that defendant's attorney was oversanguine in his statements and that a new trial might not have brought forth the new witnesses named.

It is said in *Schlauder v. Chicago & S. Traction Co.,* 160 Ill. App. 309: "To entitle a party to a new trial because of newly-discovered evidence, it must be material to the issues and controlling and practically conclusive. * * * It is not sufficient that it tends to mitigate damages * * * unless, indeed, it is practically conclusive that merely nominal or slight damages should have been recovered instead of the heavy damages awarded."

As we find no reversible error affecting either the merits or procedure, the judgment of the Circuit Court is affirmed.

*Affirmed.*