**Eve Spiro John, Appellant, v. Tribune Company, a Corporation, Appellee.**

Gen. No. 47,963.

First District, Third Division.
December 21, 1960.
Rehearing denied January 30, 1961.

301

Sidney Z. Karasik, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

A suit was brought by Eve Spiro John, hereafter referred to as the plaintiff, against Tribune Company, hereafter referred to as the defendant. The basis of the suit was the publication by the defendant of two stories which the plaintiff alleged libeled her. The case was tried before a jury, which returned a verdict in favor of the defendant upon which the court entered judgment. Plaintiff's post-trial motions for a new trial or judgment notwithstanding the verdict were over-ruled. This appeal follows.

The plaintiff here contends that she did not have a fair trial, that the trial court committed prejudicial errors in the conduct of the trial in excluding proper evidence offered by the plaintiff and in admitting immaterial and prejudicial evidence on the part of the defendant, and that the court improperly refused certain jury instructions offered by the plaintiff.

The case was before this court once before (John v. Tribune Co., 19 Ill.App.2d 547, 154 N.E.2d 862). In that appeal we set aside an order of the trial court striking the third amended complaint of the plaintiff and dismissing the suit, and the opinion contains the following statement:

> "The case grows out of two news items in defendant's newspaper describing a police raid of an apartment at 4417 Ellis avenue, Chicago, in which a number of women were arrested. On March 30, 1952, defendant published an article describing the raid, saying: 'Dolores Reising, 57, alias Eve Spiro and Eve John, who, police said, was known years ago as Accardo's woman friend, was held as the suspected keeper of the apartment.' On March 31, 1952, defendant published another article, saying that the five women arrested in the raid would appear in the Women's

court Wednesday and that 'Dorothy Clark, 57, who gave 4417 Ellis Av. as her address, was charged with being keeper of a disorderly house. . . . Police said she is also known as Dolores Reising, Eve Spiro, and Eve John, and was known years ago as a girl friend of Tony Accardo, Capone gangster.' Plaintiff's name at the time was Eve John and her maiden name was Eve Spiro. She lived in an apartment below the one raided and it is alleged in the complaint that she was the only person with that name at that address. The complaint alleges that the articles were understood by readers of defendant's newspaper to refer to plaintiff; that the statements were false and had seriously damaged plaintiff's reputation and caused her severe mental and physical distress and loss of practice as a psychologist."

It was there held that the language of the articles was libelous per se, and the court says: "What is presented for trial in this case is a question of fact and not of law. The question is whether readers of the articles did and could reasonably understand them to refer to plaintiff." The cause was remanded for trial.

The defendant thereupon filed an answer to the third amended complaint of the plaintiff, in which it admits that a raid on the premises at 4417 South Ellis Avenue, Chicago, occurred and a number of women were arrested; that plaintiff resided at 4417 South Ellis Avenue in the apartment below the apartment which was raided on March 29, 1952; that she was not present in the raid, nor was she taken to the police station; that the police records did not contain plaintiff's name; and that the defendant published the articles in question in the Chicago Tribune. Defendant stated it did not have sufficient information to admit or deny that at the times material herein plaintiff's true name was Eve John and that her name before she was married

305

was Eve Spiro. The defendant denied that it published the articles intending to injure the plaintiff in her good name and denied that statements in the articles concerning Eve Spiro and Eve John refer to the plaintiff. It stated that it had no knowledge concerning what person other than the plaintiff at 4417 Ellis Avenue used the names Eve Spiro and Eve John "save that defendant is informed and believes that plaintiff's landlord who resided on the premises has on occasions used said names." Defendant denied that it meant by the article that the plaintiff was unchaste and had been an inmate of a resort for dissolute persons, that the publications were so understood by the readers of the paper, and that the articles charged the plaintiff with any wrongdoing whatsoever or that the plaintiff has by the publication of the articles been injured in her reputation.

During the trial of the case the plaintiff testified that she had lived in the apartment at Ellis Avenue for about seven years before the raid. The building was a three-story building with a basement, the front part of which had been converted into an apartment occupied by the plaintiff. She also testified that her maiden name was Eve Spiro; that her legal name at the time of the raid was Eve Spiro John; that at that time she had been divorced from her husband Roy John and he was not living with her; that she had two daughters who did live with her; that at the time in question she worked as an intern at the Veteran's Administration, was a research assistant at the University of Chicago, did occasional lecturing, and taught at the Lawson YMCA in the adult education division in the evenings. She was also then working for her doctor's degree (Ph.D. in psychology, which she received in 1953). She had previously worked part time at Mt. Sinai Hospital Dispensary as a chief clinical psychologist. She stated that at the time of the publication she

was listed in the telephone directory under the name of Eve Spiro John, with her address that of the apartment; that she was then 27 years old; and that while she was living there she was preparing her doctoral thesis. The plaintiff was called as an adverse witness and over objection the defendant asked the following questions, after having the thesis of the plaintiff marked for identification and identified by the plaintiff, and the following answers were given:

"Q. This book dealt with sex in part and intersexuality, did it not? A. Not as commonly construed at all.

"Q. Well, did it deal—forgive me for asking these questions, but did it deal with attitudes toward sexual activities for example? A. There was one rating scale which I used in determining the state of mental health of the subjects and that rating scale was used, yes. It related essentially to you how these people regarded loving others.

"Q. Well, did it? A. This is called sexuality in psychology, but it is not what the common man refers to, I think, by sexuality."

The defendant then offered the thesis in evidence, to which offer the plaintiff objected. The book was admitted in evidence. It appears in the record as a book of 155 typewritten pages. In it there is a discussion of hetero-and homosexuality, and on at least one page of the book the discussion is quite frank and of a character which could be easily misunderstood by a person not familiar with the psychological connotations therein involved. The reason for offering the book apparently was not at the time it was offered, nor in this court, crystal clear to the defendant. In the trial court the defendant took the view that it tended to impeach the plaintiff, since the plaintiff had by implication

indicated that she did not know that her landlady was keeping a house of prostitution.

The plaintiff objected to the introduction of the book on the ground that it was immaterial, irrelevant and prejudicial.

In this court the defendant contends that the document was relevant and impeaching evidence; that if plaintiff had been aware of her landlady's activities it would be a matter for the jury to consider in determining "reputation and damages"; that the fact that the plaintiff wrote this book would indicate that she had the kind of education and knowledge which would cause her to be aware of the house activities; and that it was not prejudicial because, as said in its brief: ". . . the obviously scientific discussion of sexual attitudes contained in the latter portion of the work is to be expected in light of today's widespread discussion and interest in the relationship between sex and human behavior."

It is ordinarily considered that when matter offered in evidence is relevant and material but is in its nature prejudicial the court should balance these elements one against the other, and if the importance of the matter as evidence outweighs the danger of its prejudicial effect upon the jury, it should be admitted. In the case before us we are not required to go that far. The book was totally irrelevant and immaterial. It was hearsay and did not in any way tend to impeach any statement made by the plaintiff on the witness stand. Nor were there any admissions in the book contradicting the position taken by the plaintiff in the trial of the case. Apparently the defendant also contends, disregarding the theory of impeachment, that the book could be considered as independent evidence on its behalf as affecting the reputation of the plaintiff and mitigating the damages. Such a position is untenable and has no basis whatsoever in law. The docu-

ment, as we have said, was irrelevant and immaterial, and the statements therein contained were of a character which might appeal to the sympathy, passion or prejudice of a jury and influence it to find against the plaintiff. People v. Decker, 310 Ill. 234, 244, 141 N. E. 710.

The defendant stresses the fact that the jury would not have had time to read the entire book. This court can take judicial notice that where a book of this character is involved, it does not require much time for a juror to pick out the salient passages and call the attention of the other jurors thereto. In our opinion the introduction of this irrelevant and immaterial evidence served no conceivable purpose in the trial of the case, was highly prejudicial, and was reversible error. Jones & Adams Co. v. George, 227 Ill. 64. The questions asked plaintiff concerning the thesis were also improper.

As the case must necessarily be retried, in order to prevent some of the other errors cropping up in the new trial we will here discuss them.

At the trial the plaintiff, in order to prove that the articles were believed by readers to refer to her and that she thereby suffered damages, offered to testify about telephone calls she had received on or about the date of the publications, as well as conversations had with her. These calls and conversations were offered for the purpose of showing that the persons identified the plaintiff as the person mentioned in the articles. The defendant objected to this evidence on the grounds that it was hearsay and that the plaintiff had precluded herself by certain objections she had made to written interrogatories propounded by the defendant. The defendant's interrogatories asked for the names and addresses of all persons who the plaintiff claims construed the articles as referring to her, as well as the names and addresses of all persons who have knowledge concerning plaintiff's reputation as of the time

of the publications, and the names and addresses of all persons who have knowledge concerning any alleged damage caused to the plaintiff by the publications. The plaintiff filed objections to the interrogatories on the grounds that they were irrelevant and immaterial, that the issue of whether the libelous publications were of and concerning the plaintiff does not depend on the construction placed upon the publications by individual persons, and that damages were not an issue in the case since in the previous decision of the Appellate Court the articles were held to be libelous per se. A month later the defendant's attorney wrote to plaintiff's attorney and said, with reference to the objections to the interrogatories filed:

". . . You will recall that at the time we agreed to defer having a hearing concerning your objections while I was away on vacation and thereafter I advised you that we would consider what, if anything, we further wished to do concerning your objections.

"We shall accept the position taken in the objections concerning the immateriality and irrelevancy of the evidence or facts sought to be elicited by the questions. Accordingly, having accepted your view concerning what is immaterial and irrelevant in the cause, we shall of course not set your objections down for hearing."

The interrogatories were filed under Rule 19–11 of the Supreme Court, which, among other things, provides that within ten days after the service of interrogatories written objections may be served, together with a motion for the hearing of the objections, and that "Answers to interrogatories to which objection is made shall be deferred until the objections are determined . . . . Interrogatories may relate to any matters which might be inquired into by deposition.

The answers may be used in evidence to the same extent as the deposition of an adverse party."

█ The interrogatory asking for the names of those persons known to the plaintiff who had interpreted the articles as being about plaintiff was proper under Supreme Court Rules 19–4 and 19–11 as interpreted in Krupp v. Chicago Transit Authority, 8 Ill.2d 37, 132 N.E.2d 532, and Hruby v. Chicago Transit Authority, 11 Ill.2d 255, 142 N.E.2d 81. We gravely question the propriety of the interrogatories asking for the names of persons known to the plaintiff who have "knowledge concerning the plaintiff's reputation as of the time of the publication . . ." and of those who have "knowledge concerning any alleged damage caused to the plaintiff by the defendant's publications . . . ."

Rule 19–12(3) provides that if a party unreasonably refuses to comply with Rule 19–11 or any order entered under such rule the court may order that the party be nonsuited, that his complaint be dismissed, that all or any portion of his pleadings be stricken and judgment rendered on the remaining pleadings in the case, that he be debarred from filing any other pleading or from maintaining any particular claim, counterclaim, third-party complaint, or defense respecting which discovery is sought, or that further proceedings be stayed pending compliance.

The view of the defendant is that the plaintiff had "refused" to disclose the names sought in the interrogatories and at the trial the court was justified in refusing to permit the plaintiff to submit such evidence. In support of such contention defendant, after stating that there are no Illinois cases on the subject, cites certain federal cases: (Fisher v. Underwriters at Lloyd's London, 115 F.2d 641 (plaintiff refused to answer interrogatories); Hipp v. Hipp, 134 A.2d 493 (Munic. Ct. App. D. C. 1957—a party had refused to

appear for a deposition concerning alimony and he was not permitted to testify at the hearing on the motion for alimony); Alamo Theatre Co. v. Loew's, Inc., 22 F. R. D. 42 (N. D. Ill. 1958—where the plaintiff, in answer to defendants' interrogatories, made admissions that it had no knowledge or information to substantiate certain factual allegations of the complaint, the court would not require defendants to answer plaintiff's interrogatories in the nature of a fishing expedition for facts to support its allegations, and such allegations were stricken and plaintiff's further interrogatories were restricted to remaining cause of action).

■■ Here the plaintiff filed objections based on her attorneys' interpretation of the law. In the letter from the defendant's counsel he agreed that the facts sought to be elicited by the interrogatories were immaterial and irrelevant. The agreement was only that it was not necessary for the plaintiff to answer the interrogatories. The plaintiff did not fail to comply with Rule 19–11. Either party could have asked for a ruling of the court. Even if the court had ruled on the question as to whether or not it was necessary for the plaintiff to answer the interrogatories, its ruling would not have adjudicated the admissibility of the answers in evidence, but only determined the relevancy of the information sought to the subject matter in the pending action. Bowles v. Safeway Stores, 4 F. R. D. 469. Answers to interrogatories are not pleadings. Dunleer Co. v. Minter Homes Corp., 33 F. Supp. 242; Bowles v. Safeway Stores, supra; P. Rielly & Son v. National Parlor Furniture Co., 192 Ill. App. 395. In Ross v. Ross, 113 A.2d 700 (N. J.), the court says that answers to interrogatories are not pleadings, that they are in the nature of evidence and do not alter the pleadings, and under ordinary circumstances they should not have the effect of limiting the party's proof

in the way that pleadings do. See also 4 Moore's Federal Practice (2nd ed.), par. 33.29[2]; Fitzpatrick v. St. Louis-San Francisco Ry. Co., 300 S.W.2d 490, 500 (Mo.). That being true the interrogatories, standing alone, could not be considered pleadings, nor could they in any way limit the evidentiary proof in the trial. P. Rielly & Son v. National Parlor Furniture Co., 192 Ill. App. 395.

█ In the case before us answers to the interrogatories were not filed, nor was there any ruling by the court with reference to the relevancy of the interrogatories. Had the court ruled that the interrogatories were relevant and had ordered the plaintiff to answer and the plaintiff then wilfully refused, the action of the trial court in excluding evidence might be justified. There was nothing in the nature of an estoppel, nor was there anything in the nature of an agreement as to a rule of law governing the trial of the case.

██ It has been frequently held in this State that evidence may be introduced to identify the plaintiff as the one referred to in the libelous publication. Ball v. Evening American Pub. Co., 237 Ill. 592, 86 N. E. 1097; Nelson v. Borchenius, 52 Ill. 236; Merrill v. Marshall, 113 Ill. App. 447. The plaintiff's testimony as to what persons said to her indicating that they associated her with the Eve John or Eve Spiro named in the publications was admissible.

█ Where knowledge, belief, reasonableness and sanity, etc. are among the issues on the trial, declarations made by the person in question or others may constitute circumstantial evidence bearing on the issues, and the hearsay rule would have no application. Wigmore on Evidence, 3rd ed., secs. 266 and 1788–90; McCormick on Evidence, secs. 268, 269 and 273; 31 C. J. S. Evidence, sec. 255. (Some writers consider such testimony is hearsay but should be admitted under an exception to the hearsay rule.) As far as our

discussion here is concerned, the important factor is that the evidence is admissible. In Towne v. Towne, 191 Ill. 478, 482, 61 N. E. 426, where the question involved was whether a deceased member of a benefit society knew of and acquiesced in a mistake made by the clerk of the society in the names of the beneficiaries when making out a new certificate, the court held that declarations made by the insured during the time he retained the certificate were competent. The court said: "The thing in question, however, was the state of his mind and his intention and understanding as to the certificate. The mistake having been made, the court was called upon to decide whether he knew of it or acquiesced in it, and his conduct, demeanor and declarations concerning the certificate were all evidence on that subject." See also Lund & Wife v. Inhabitants of Tyngsborough, 63 Mass. 36, at page 43, where the court says: "Perhaps the most common and largest class of cases in which declarations are admissible, is that in which the state of mind or motive with which any particular act is done is the subject of inquiry." The court calls attention to the reception in evidence of the cries of the mob in the trial of Lord George Gordon as tending to explain the purpose and intent of the multitude which the prisoner had called together and which accompanied him when he presented his petition to parliament.

Jozwiak v. Sadek [1954] 1 All E. R. 3, was a case decided in the Queen's Bench Division in 1953. It was an action for libel where the issue was as to whether the words appearing in the newspaper related to the plaintiff, and the plaintiff sought to tender evidence of anonymous telephone messages received by him, after the publication, and of statements made at public meetings. The court held that such evidence should be admitted over the defendant's objection that it was hearsay, and the court says:

314

"I have come to the conclusion that it should be admitted . . . . There are two older authorities which probably are more in point. One of them is Cook v. Ward, [(1830), 6 Bing. 409], which was a libel action in which, in order to identify the plaintiff with the libel, evidence was called of laughter and statements which had been made at a vestry meeting. It was held that the evidence was admissible on that ground, i.e., on the ground that it identified the plaintiff with the subject of the libel. Equally, in Du Bost v. Beresford, [(1810), 2 Camp. 511], the question arose, although, in fact, the action was not a libel action, whether the subject of a picture was libellous, and it was held that evidence was admissible of remarks made by persons who saw the picture when it was exhibited, to show that those persons had identified the subject of the libel with the plaintiff. The report is a short one, but the note is (2 Camp. 512):

" 'In the course of the trial Lord Ellenborough held upon argument, that the declarations of the spectators, while they looked at the picture in the exhibition room, were evidence to show that the figures portrayed were meant to represent the defendant's sister and brother-in-law.'

"On the authority of those decisions, and indeed, I think, on the application of the ordinary principles of evidence, I feel that I ought to admit the evidence of statements made at meetings . . . which took place after the publication of this story; and if that be so, I fail to see that I am extending the principle if, at the same time, I hold that evidence of telephone communications to the plaintiff in which similar statements were made is admissible in evidence."

The trial court erred in refusing to permit the plaintiff to testify concerning the various telephone calls

315

received by her after the publication of the alleged libel and which identified her as the party therein referred to.

The issues formed by the pleadings in this case were whether the articles admittedly published by the defendant referred to the plaintiff and were so understood by the readers of the newspaper and the employers of the plaintiff, namely, the administration of the University of Chicago and the head of the Veterans Administration. In Peck v. Tribune Co., 214 U. S. 185, the court, considering whether a publication was libelous, says: "As was said of such matters by Lord Mansfield, 'Whatever a man publishes he publishes at his peril'. The King v. Woodfall, Lofft 776, 781." In John v. Tribune Co., supra, the court found that the articles were libelous per se. Consequently the law conclusively presumes malice in law, and general damages, without proof of loss or injury, are conclusively presumed. Cook v. East Shore Newspapers, Inc., 327 Ill. App. 559, 595, 64 N.E.2d 751. In the latter case it is also further pointed out that where the article is libelous per se there may also be malice in fact, and the court says: "Malice in fact is 'a formed design of doing mischief to another.' (First Nat. Bank of Flora v. Burkett, 101 Ill. 391, 394.) It is also defined as follows: 'actual malice or malice in fact, means a positive desire and intention to annoy or injure another person.' (34 Am. Jur. p. 681.)" The existence of actual malice may be inferred where a defamatory publication is made without proper cause or excuse. Where malice in law or actual malice exists punitive damages may be awarded. Cooper v. Illinois Pub. & Printing Co., 218 Ill. App. 95; O'Malley v. Illinois Pub. & Printing Co., 194 Ill. App. 544; Hintz v. Graupner, 138 Ill. 158, 27 N. E. 935; Lion Oil Co. v. Sinclair Refining Co., 252 Ill. App. 92, 105. In a case such as the instant case, where there is no plea of justi-

fication nor claim of knowledge, the defendant may, in order to mitigate at least punitive damages, show circumstances which could negative actual malice. Such evidence cannot be considered as having any effect on the existence of malice in law, nor can it be admitted if it tends to prove the truth of the charge. In Thomas v. Dunaway, 30 Ill. 373, at 388, the court holds that where a plea of general issue and justification has been filed, evidence introduced by the defendant to support justification which fails to prove the truth of the article may be properly considered by the jury in mitigation of damages.

 In the case before us the defendant has pleaded that it had no intent to charge the plaintiff with any wrongdoing. On the issue that the article as presented did not refer to the plaintiff but referred to the plaintiff's landlady, Reising or Clark, the defendant sought to introduce evidence from the reporter at the police station immediately following the raid that he got his information concerning the identity of the keeper from two police officers at the station, one of whom at the time of the trial was dead. He was permitted to give this evidence over the objection of the plaintiff. Where the publication of defamatory matter is shielded by no privilege it will be no justification or defense that the defendant in good faith believed the charges to be true and was not animated by ill will or actual malice, even though the defendant had probable cause for such belief. However, in order to negative actual malice and for the purpose of mitigating punitive damages, the defendant may prove that he in good faith believed the charges to be true, and, as evidence of that belief, show that he had received the information upon which the libelous statement was based from a third party and that after having made a sufficient investigation he believed the charges to be true. 53 C. J. S. Libel and

Slander, sec. 138; Spolek Denni Hlasatel v. Hoffman, 204 Ill. 532, 68 N. E. 400; Stephens v. The Commercial News Co., 164 Ill. App. 6; Cobbs v. The Chicago Defender, 308 Ill. App. 55, 31 N.E.2d 323; Kulesza v. Alliance Printers & Publishers, 318 Ill. App. 231, 47 N.E.2d 547; Cook v. East Shore Newspapers, supra. However, such testimony should be offered for that restricted purpose and the plaintiff should be entitled to an instruction so limiting it. Spolek Denni Hlasatel v. Hoffman, supra, 537, 539.

The defendant introduced in evidence a deposition of the landlady of the plaintiff, Dorothy Clark, taken by the defendant in January 1955. In laying the foundation for the introduction of the deposition the defendant offered a witness, an employee of the attorneys for the defendant, who testified that on the Wednesday before the trial (the trial was commenced on Thursday) he had attempted to serve Dorothy Clark with a subpoena at the address at which she had been arrested; that he did not find her there, nor were there any white people living in the building. The defendant next called another employee of the attorneys for the defendant, who testified that he had, in attempting to locate Clark, found out the firm of attorneys by whom she had at one time been represented; that both members of the firm told him that she was living out of the State—in the State of Wisconsin—and that he did not try to locate her in that State. Upon this evidence the court permitted the deposition to be read in evidence.

 The deposition should not have been permitted in evidence unless the defendant made a showing that the attendance of the absent witness could not have been procured by the use of reasonable diligence. An attempt to procure the witness the day before the trial has been held to be a lack of diligence. Devine v. Chicago City Ry. Co., 182 Ill. App. 366, and cases cited

at p. 368. That case also holds that while the right to receive such testimony was a matter of discretion for the trial judge, where recognized rules of procedure are so far ignored as to result in substantial injustice, it amounts to an abuse thereof and constitutes error. The evidence with reference to what the investigator was told by attorneys who had at some time represented Clark was purely hearsay and in no sense competent. 26A C. J. S. Depositions, sec. 92(2)b(c)bb [p. 441]. The investigation made by the defendant upon which the court permitted the reading of the deposition was purely perfunctory. We are not making any comment upon what weight should be attached to the deposition had it been properly introduced in evidence.

We find no error in the court's refusal to give certain instructions tendered by the plaintiff.

The judgment of the Circuit Court is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

SCHWARTZ, P. J. and DEMPSEY, J., concur.