THE SPOLEK DENNI HLASATEL

*v.*

ALOISIE HOFFMAN.

*Opinion filed October 26, 1903.*

1. LIBEL—*what evidence is not admissible under plea of justification.*
Under a plea of justification in an action for libel, proof that the
facts published were told to the defendant by another person is
not admissible for the purpose of establishing the truth of the
published article.

2. SAME—*how far hearsay is admissible in mitigation.* Under the
general issue in an action for libel, the defendant may show, as
tending to mitigate damages, that he published the article upon
the strength of facts told to him by a party in a position to be cog-
nizant thereof and who defendant believed was telling the truth.

3. SAME—*details of conversation on which publication is based not ad-
missible.* If the defendant in an action for libel has testified that
the statements made in the published article were repeated to
him by the plaintiff's husband, it is not error to refuse to permit
a witness who was present at the interview to give the details of
the conversation.

*Spolek Denni Hlasatel* v. *Hoffman,* 105 Ill. App. 170, affirmed.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Supe-
rior Court of Cook county; the Hon. AXEL CHYTRAUS,
Judge, presiding.

This is an action for libel, begun on June 30, 1899, in
the superior court of Cook county by appellee against
appellant. The trial was before the court and a jury,
and resulted in a verdict and judgment in favor of appel-
lee for $1800.00. This judgment has been affirmed by the
Appellate Court, and the present appeal is prosecuted
from such judgment of affirmance. In May, 1899, appel-
lee, the wife of one Vaclav Hoffman, was living separate
and apart from her husband, having applied for a divorce.
The appellant, defendant below, Spolek Denni Hlasatel,
is a corporation, organized under the laws of Illinois, and
in May, 1899, was publishing a newspaper in Chicago,
printed in the Bohemian language.

On May 27, 1899, appellant's newspaper published an article, which, after setting forth what purported to be a statement of appellee's courtship and marriage, continued as follows: "From that time on it appears his wife [meaning appellee] slighted him and sought elsewhere a substitute, although she had a little girl now six years old. She frequently absented herself from her home. * * * They no more than moved to their new residence when Mrs. Hoffman began to throw up to him that she did not need him any more. She herself would go out nights after nine o'clock. * * * A peculiar circumstance, however, served him [the husband] well. On the 30th of September last year he was at home alone with his little girl, lying on his bed. He was dozing. In that interval he saw his wife, who did not know of his presence in the home, begin to make love with their neighboring saloon-keeper, Angelic. He quickly jumped up, but the seducer ran away. On that day he left the house and returned on the third of October, when she drove him out, saying that she had no more use for him."

It is charged in the declaration that, by the statement that the appellee slighted her husband "and sought elsewhere a substitute," it was meant and intended to charge the plaintiff with the crime of adultery, and with having sexual intercourse with a man or men other than her lawful husband; and that, by the statement that appellee's husband saw his wife "begin to make love with their neighboring saloon-keeper, Angelic," and that, when the husband jumped up, "the seducer ran away," it was meant and intended to charge the plaintiff "with having had unlawful sexual intercourse or with being about to have unlawful sexual intercourse with said Angelic, and * * * that this plaintiff and the said Angelic were interrupted in the commission of the offense of adultery."

Appellant filed the general issue, and also three special pleas, setting forth, *first,* that the language of the publication was not intended to and did not convey to

the readers of the article the meaning alleged and attributed to it in the declaration; *second*, that the publication was a fair *bona fide* comment in a newspaper article upon the conduct of the plaintiff in a public capacity; and, *third*, that the facts set out in the article were true.

Upon the trial, one R. J. Tupy was called as a witness on behalf of the defendant, and gave testimony without objection, a part of which was as follows: "I wrote the printed article set out in the declaration the day prior to its publication. It was written in the office of the defendant. I had no acquaintance with plaintiff prior to writing the article. I never met Vaclav Hoffman before that. I met him in the office of Kohout & Novak on the 26th, at ten o'clock in the morning. Before that I knew of a divorce suit pending between plaintiff and her husband. I procured the information set out in the article from Mr. Hoffman. I knew nothing about the facts, set forth in the article, except as I learned through Mr. Hoffman."

Subsequently, Edward J. Novak, a lawyer, and a member of the firm of Kohout & Novak, was called as a witness on behalf of defendant, and gave testimony, which in part was, in substance, as follows: "I knew Vaclav Hoffman, defendant in the divorce suit commenced by Aloisie Hoffman. I knew Mr. Tupy. I saw Mr. Hoffman and Mr. Tupy at my office in May, 1899. They were there talking possibly three-quarters of an hour."

Thereupon, the following questions were asked of the witness, Novak, on the part of the defendant, to-wit: "Q. What, if anything, was said at that time by Hoffman to Tupy with reference to Hoffman's wife's conduct?" "Q. Was there anything said on that subject by Hoffman and Tupy at the interview you speak of?" "Q. Was there anything said by Hoffman to Tupy at that interview concerning Hoffman's wife?" Each one of these questions, when asked, was objected to by counsel for the plaintiff; each objection was sustained by the court, and to each

ruling the defendant excepted. Thereupon, the counsel for the defendant made the following offer of proof: "If the court please, I desire to prove by this witness that, at the interview alluded to, Mr. Hoffman, in substance, told Mr. Tupy all the facts that were set out in the alleged libelous article." To this offer of proof the plaintiff objected; the court sustained the objection, and the defendant below excepted.

Fanning & Herdlicka, and Hiram T. Gilbert, for appellant.

William C. Malley, and V. A. Geringer, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

Various errors were assigned upon the record in this case when the case was before the Appellate Court; but counsel for appellant announce in their brief that the only question, now desired to be presented to this court, is whether the rulings of the trial court upon the questions asked of the witness Novak, and upon the offer made in regard to what was expected to be proven by that witness, were correct or not.

It is stated by counsel for appellant that the purpose of the. evidence offered by it, which the court rejected, was to show that the libel was not a mere invention of appellant, but was the result of a communication made to appellant, or to appellant's agent, by the husband of appellee. The contention is, that one, who publishes a libel which is entirely of his own invention, is much more malicious, and deserving of punishment by way of exemplary damages, than one who in good faith makes a publication on the strength of a statement of one apparently cognizant of the facts, which the one, who makes the publication, believes to be true.

There are authorities, which hold that testimony as to what the defendant had been told by another is admissible, because it tends to show that the defendant spoke the words in good faith, and believed them to be true; that such testimony rebuts the charge that the words spoken or written were fabricated maliciously; and that the sources of information, and the reliability of such sources, and belief in the truth of the allegations made may be shown to rebut the presumption of malice, which otherwise obtains, and to reduce the damages, but not as a substantive proof of the truth. (*Lawler* v. *Earle*, 5 Allen, 22; *Owen* v. *Dewey*, 107 Mich. 67; *Farr* v. *Rasco*, 9 id. 353).

It has been held that proof, that the defendant repeated but did not originate the alleged slander, does not amount to a justification, but may be considered in mitigation of damages. (*Hinkle* v. *Davenport*, 38 Iowa, 356; *McDonald* v. *Woodruff*, 2 Dill. 245; *Fitzpatrick* v. *Daily States Publishing Co*. 48 La. Ann. 1116).

In *Young* v. *Bennett*, 4 Scam. 43, it was held by this court that, in an action for slander in charging the plaintiff with stealing, it is not admissible for the defendant to prove under the general issue in mitigation of damages, that there was a report in the neighborhood of the plaintiff, that he had been guilty of stealing from the defendant.

In *Regnier* v. *Cabot*, 2 Gilm. 34, we said (p. 38): "Whether a party, under the general issue, in an action of slander, can be permitted to show, in mitigation of damages, specific facts which would tend to cast suspicion of guilt upon the plaintiff, is a question upon which heretofore there has been some conflict of authorities. The current, however, of the more recent decisions is strongly against the doctrine, and, in some of the very few cases where it has been held that the defendant had this right, the judges themselves, who admitted the correctness of the principle, acknowledged that it was unsupported by

sound reason, or good sense.  *  *  *  The rule of law, as applicable to this question seems, by the weight of authority, now to be, that, where a defendant does not justify, he may mitigate damages in two ways only: *first*, by showing the general bad character of the plaintiff, and *second*, by showing any circumstances which tend to disprove malice, but do not tend to prove the truth of the charge." In the case of *Regnier* v. *Cabot*, *supra*, it was also held that, by the plea of not guilty, or the plea of general issue, in an action of slander, the defendant only declares that he did not speak the words charged in the plaintiff's declaration to have been spoken by him, and does not affirmatively allege that they are true, but admits them to be false, and only professes to defend himself, upon the ground that he has not defamed the plaintiff's character in the manner charged against him in the declaration.

In *Sheahan* v. *Collins*, 20 Ill. 326, the doctrine laid down in *Young* v. *Bennett*, *supra*, and *Regnier* v. *Cabot*, *supra*, was endorsed and re-affirmed. (See also *Storey* v. *Early*, 86 Ill. 461).

In the American and English Encyclopedia of Law, (vol. 18,—2d ed.—p. 1073), it is said: "It is no defense in an action for libel or slander to show that a rumor existed as to the matters published, or that the information, upon which the charge was made, was derived from another, even though the defendant at the time believed the matter to be true, and the rule is not altered, though the defendant in making the charges stated that he was only repeating a rumor, or that he relied on information from another, whose name he mentions." (See cases in note cited to sustain the text).

The appellant, upon the trial below, did not attempt to show, by way of mitigating the damages, that the plaintiff was a person of general bad character. No testimony whatever was introduced to that effect. If it be admitted that appellant had a right to show under the

general issue, by way of mitigating damages, that the facts published by it were communicated to it by appellee's husband, proof to that effect was introduced without objection, and the fact, that the appellant did not originate the statements published by it but was informed of the facts therein contained by the appellee's husband, was established by the testimony. The witness, Tupy, a reporter for the appellant newspaper, said in his evidence: "I procured the information set out in the article from Mr. Hoffman; I knew nothing about the facts set forth in the article, except as I learned through Mr. Hoffman."

The testimony, thus given by Tupy, was not denied or disputed by the appellee. The only testimony, proposed to be called out by the questions subsequently addressed to the witness, Novak, related merely to the details of the conversation between Hoffman, appellee's husband, and Tupy, appellant's reporter. The details of the conversation could not have made the fact, that appellant did not originate the statements made by it but was informed of them by another, any stronger or more emphatic than it was already made by the evidence of Tupy, the reporter. His evidence made every fact narrated in the article a part of the conversation he had with Hoffman. Therefore, appellant suffered no injury from the action of the court in refusing to allow the witness, Novak, to answer the questions addressed to him.

There is another reason why no error was committed by the court in this respect. In the case at bar, the appellant filed a plea of justification, and therein asserted that the statements published by it were true. Testimony as to what appellee's husband told appellant's reporter, or agent, was mere hearsay evidence, and wholly incompetent for the purpose of proving the truth of the statements, published in the newspaper article. Such proof is never admitted in support of the plea of justification, but, when received, is only admitted, under the

general issue, for the purpose of showing that the appel-
lant was not influenced by malice, but merely stated that
of which he was informed by others. When the offer was
made to prove the conversation between Hoffman and
Tupy, it was not accompanied by the statement that it
was merely for the purpose of mitigating the damages,
and showing that appellant was not influenced by ma-
licious motives. Nor was any instruction asked by the
appellant, or given to the jury, telling them that the in-
formation, communicated by Hoffman to the appellant's
agent, was not evidence of appellee's guilt or miscon-
duct. No instruction was given limiting such testimony
to the mitigation of damages only. A plea of justifica-
tion having been filed by the appellant, the details of the
conversation, if they had been testified to by the witness,
may have been regarded by the jury as tending to prove
the truth of the charges in the libel, when they could not
have been properly introduced for any such purpose.

Substantially, the same state of facts, presented by
this record in respect to the point here under considera-
tion, existed in the case of *Thomas* v. *Dunaway*, 30 Ill. 373,
which was an action for libel. In that case, it was held
that the defendant in an action for libel, by pleading the
general issue, virtually admits the falsehood of the state-
ments on which the action is based, but if it is proved
that he did publish them, he may then, under that issue,
show any circumstance in mitigation, which tends to dis-
prove malice, but does not tend to prove the truth of
the charge; and it was there said (p. 386): "It is also in-
sisted that the court erred in not permitting the witness,
Schooley, to testify that appellant, before he made the
publication, had been informed by Jesse Dunaway, that
all the charges were true. Jesse Dunaway had already
testified that he gave the information upon which the
appellant made the publication. * * * It would, there-
fore, seem to be a matter of no consequence, whether
Schooley testified to that fact, as it does not seem to

have been controverted, that Dunaway did give the information." So, in the case at bar, Tupy had already testified that appellee's husband had informed him of the facts published in the newspaper article, and it would seem to be a matter of no consequence whether Novak testified or not as to the details of the information so communicated. It is not controverted in this case that Hoffman, appellee's husband, did give the information.

We find no error in the action of the trial court, so far as our attention has been called to it, and, therefore, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*