# William Fenimore Cooper, Appellee, v. Illinois Publishing and Printing Company, Appellant.

## Gen. No. 24,704.

1. LIBEL AND SLANDER, § 56*—*what comments are permitted.* The rule that the defendant in a suit for libel may attempt to prove that the words charged were fair comment and did not in and of themselves constitute libel is not to be construed as permitting defendant to set up as a defense the alleged comment and criticism where they are based upon that which is untrue.

2. LIBEL AND SLANDER, § 56*—*what is extent of constitutional privilege of free speech.* The constitutional privilege of free speech should not be construed as allowing the press, under the guise of fair comment, unjustly to assail the integrity of the bench.

3. LIBEL AND SLANDER, § 64*—*what is effect of truth of statement.* Although the publication of the truth, without malice, carries with it immunity from prosecution, the law entails liability for the publication of that which is false.

4. LIBEL AND SLANDER, § 101*—*when amendment does not state*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*new cause of action.* In a suit for libel, an amendment adding to the words charged in the declaration is not objectionable as stating a new cause of action when the text of the words charged still conform, after such amendment, to the article as published; such count of the amended declaration is still based upon the same article as the amended count; the article as stated in the amendment was published by the same defendant about the same plaintiff, at the same time and in the same newspaper; an analysis of the added words discloses no new and different libelous imputations; judgment on the original count would have been *res adjudicata* in a suit based upon the amended count.

5. LIBEL AND SLANDER, § 56*—*what are statements of fact rather than comment.* In a suit for libel, dogmatic statements that a judge is unfit made in a newspaper article which does not contain the trial record of such judge will be held, as a matter of law, to be statements of fact, even though some of such words, technically considered, are in the nature of comment upon what is implied in other words in the same publication in which the judge's record is set forth, and though the facts and such comment are so intermingled as that it is difficult to disassociate one from the other, where the impression produced upon the mind of the average reader is that the statements are statements of fact.

6. LIBEL AND SLANDER, § 56*—*when court may determine what are statements of fact.* It is for the court and not for the jury to decide whether dogmatic statements made in a newspaper article that a judge is unfit, in which article there is not contained any statement of the judge's record, are statements of fact or are comments upon his record.

7. LIBEL AND SLANDER, § 56*—*what statements are actionable.* A dogmatic statement in a newspaper article that a judge is unfit is, unless proven to be true, actionable.

8. LIBEL AND SLANDER, § 140*—*when evidence is inadmissible.* In a suit for libel to recover damages for the statement made in defendant's newspaper that plaintiff, a judge, was unfit, it is not error to refuse in evidence a document, which defendant's reporter testified he had received from an Assistant's State's Attorney and had checked with the records before the publication, which document purports to be a list of all the six cases appearing on plaintiff's calendar, during a certain period when he was sitting in the criminal court, together with notations showing their final disposition by him, as such document was in the nature of hearsay, did not tend to prove justification and was not admissible in mitigation of damages.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Cooper v. Illinois Publishing and Printing Co., 218 Ill. App. 95.

9. LIBEL AND SLANDER, § 134*—*what may be shown where judge is libeled.* In a suit for libel in charging a judge with unfitness by reason of his conduct and rulings in sex cases, defendant may show under a special plea of justification everything which transpired in such cases, any overt acts and rulings, all conduct on plaintiff's part in the trial of sex cases, and any and all evidence submitted before plaintiff in such cases is competent, including cases not mentioned in the alleged libel.

10. LIBEL AND SLANDER, § 740*—*what evidence is admissible in justification.* In a suit for libel in charging a judge with unfitness by reason of his conduct and rulings in cases before him involving sex questions, under a special plea of justification defendant may introduce in evidence a certified copy of the record in such a case tried before plaintiff, to be considered by the jury, in connection with the other facts in evidence, upon the question of justification and upon the issue of defendant's good faith and in mitigation of damages.

11. APPEAL AND ERROR, § 1300*—*what may be assumed as to evidence admitted in libel suit.* Until the contrary is established by the evidence, it must be assumed, on appeal, that a certified copy of an order appearing in the record in another case which was offered in evidence below speaks the truth as to the facts recited therein.

12. LIBEL AND SLANDER, § 142*—*what evidence of justification may be excluded.* In a suit for libel, proffered evidence which is admissible under defendant's plea of justification does not come within the rule excluding evidence which merely tends to cast suspicion.

13. LIBEL AND SLANDER, § 140*—*what is effect of offer of evidence.* In offering in evidence, in a suit for libel, an exhibit which is admissible on any other issue, it is not necessary, to render it admissible on the question of defendant's good faith and want of malice, that the offer be limited to such issue, if the offer includes a reference to the issue of good faith and want of malice.

14. LIBEL AND SLANDER, § 142*—*what evidence is hearsay.* In a suit for libel, while a witness may properly be permitted to testify that he talked with other persons in investigating before publishing the article complained of, his evidence as to what such persons said to him is properly excluded as hearsay.

15. LIBEL AND SLANDER, § 161*—*what question may be submitted to jury.* In a suit for libel, in charging a judge with unfitness by reason of his conduct and rulings in sex cases in which defendant enters a plea of justification, it is proper to permit the jury to

pass upon the fitness or unfitness of plaintiff as a judge as determined by them from their consideration of the quality of his judicial acts.

16. LIBEL AND SLANDER, § 140*—*when evidence of reputation is admissible*. In a suit for libel, in charging a judge with unfitness by reason of his conduct and rulings in sex cases, evidence as to plaintiff's reputation in the trial of sex cases prior to the date the alleged libel was published is admissible as tending to mitigate the damages.

17. LIBEL AND SLANDER, § 140*—*when entire article may be shown*. Where plaintiff introduces, as an exhibit in a suit for libel, the headlines of an article published in defendant's newspaper, defendant should be permitted to introduce the subject-matter of the article and of another article to which the headlines relate and which must be and is intended to be read in connection with and explanation of the headlines, notwithstanding the purpose in introducing the headlines was to show malice.

18. LIBEL AND SLANDER, § 140*—*when evidence of intimidation is admissible*. In a suit for libel, in charging a judge with unfitness by reason of his conduct and rulings in sex cases, evidence of a conversation between plaintiff and defendant's reporter, shown to have been authorized by defendant to interview plaintiff, which tends to support plaintiff's theory that defendant was seeking to intimidate him and influence him against impaneling a special grand jury, suggesting that the article complained of would be published if he did so, is admissible.

19. LIBEL AND SLANDER, § 140*—*when reiterations are admissible*. In a suit for libel, articles and cartoons published after the article complained of reiterating the charge contained in the former article are admissible for the purpose of showing actual malice aggravating the damages recoverable.

20. LIBEL AND SLANDER, § 56*—*when statement is libelous per se*. It is libelous *per se* to charge that a judge is unfit by reason of his rulings and conduct in sex cases.

21. LIBEL AND SLANDER, § 128*—*when defendant has burden of proof*. In a suit for libel, where plaintiff has proven the publication of words libelous *per se*, the burden is on defendant to show that they were true, and defendant is not entitled, at the close of plaintiff's evidence, to a directed verdict on the ground that plaintiff had not proven that the words were false.

22. LIBEL AND SLANDER, § 56*—*when plea of fair comment is not available*. Where the words charged are, in part, statements of fact, and such words are libelous *per se*, there can be no defense of fair comment and criticism.

---

*See *Illinois Notes Digest*, Vols. XI to XV, and *Cumulative Quarterly*, same topic and section number.

Cooper v. Illinois Publishing and Printing Co., 218 Ill. App. 95.

23. LIBEL AND SLANDER, § 152*—*when exemplary damages are recoverable.* In a suit for libel, where the words are libelous *per se*, exemplary and punitive damages are recoverable even though only implied malice is shown.

24. APPEAL AND ERROR, § 1256*—*when error in instructions cannot be complained of.* One cannot complain on appeal of instructions which are more favorable to him than the law warrants.

ON PETITION FOR REHEARING.

1. LIBEL AND SLANDER, § 133*—*when offer of evidence is competent.* In a suit for libel, in charging that plaintiff is unfit as a judge by reason of his conduct and rulings in sex cases, in which defendant files a special plea of justification, the rule that an offer of evidence as to what transpired at the trial of any sex case tried before plaintiff, is competent, is to be construed as rendering competent any such material evidence at the time it is offered, providing it is counsel's stated purpose in offering it that at least the substance of what occurred in the course of the particular sex case will eventually be offered and be shown to be material, and if the substance thereof is not eventually offered, such of the matter occurring in the sex case as has been introduced should be stricken out unless it has, in and of itself, reasonably considered and having in mind the issue, some probative force and tends to support the theory of the defense.

2. LIBEL AND SLANDER, § 105*—*what must be extent of plea of justification.* The rule that the plea of justification must be as broad as the charge, and one guilty of publishing the whole of the alleged defamatory matter cannot justify by showing that some of it, though divisible from the rest, was true, is subject to the qualification that where several separate and distinct matters are charged, the defendant may justify as to one though he fail as to the others.

3. LIBEL AND SLANDER, § 146*—*what is effect of proving truth of some of charges.* In a suit for libel, where the articles complained of make certain charges of judicial misconduct against plaintiff, a judge, in the trial of sex cases, many of which cases are expressly mentioned, if defendant, who pleads justification, proves on the trial that any of such charges are true, it justifies in so far as those charges are involved.

4. LIBEL AND SLANDER, § 142*—*when judicial records are admissible.* In a suit for libel where the publication complained of makes charges of judicial misconduct against plaintiff, a judge, in the trial of sex cases and defendant pleads justification, an ex-

hibit, consisting of a certified copy of the record of one of such cases which was particularly pleaded in one of defendant's special pleas of justification, showing that plaintiff imposed a fine of $5 on one found guilty of assault with intent to commit rape, is admissible, and plaintiff may introduce evidence in rebuttal to show that such record, which imports verity, is, in fact, correct, and such record is also admissible as tending to substantiate a similar statement of plaintiff's holding in such case which was contained in an article offered in evidence by defendant after plaintiff had introduced in evidence the headlines preceding such article.

5. TRIAL, § 56*—*when witness may explain evidence received.* After an exhibit consisting of the certified record of a case has been admitted in evidence, it is proper to permit a witness to testify that he had examined the record of the case in the court in which it was filed and found it as set forth in the exhibit.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Reversed and remanded. Opinion filed April 21, 1920. Rehearing denied and additional opinion filed July 14, 1920.

ROY D. KEEHN, for appellant; JACOB M. DICKINSON, EDWARD G. WOODS and CHARLES CENTER CASE, JR., of counsel.

STEIN, MAYER & DAVID and JOHN J. COBURN, for appellee; SIGMUND W. DAVID and OSCAR BLUMENTHAL, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is a suit for damages for alleged libel. It was here once before on a question of pleadings. *Cooper v. Lawrence,* 204 Ill. App. 261. Since then it has been tried before a jury and a verdict and judgment rendered against the defendant in the sum of $75,000. From that judgment this appeal is taken.

In our former opinion we set forth a fair résumé of the alleged libelous words so that it is not now necessary to reiterate them, at large, here.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

In the former decision of this cause, we stated that the alleged libelous words charged (1)—in the first count—"moral and intellectual unfitness"; (2)—in the second count—"wickedness, incapacity and unfitness"; and (3)—in the third count—that in his court "young girls may be attacked with impunity"; and he "will not in such cases apply the law and administer justice." We further stated that the alleged libelous words set forth in each count charged the plaintiff with unfitness and tended to degrade him in the eyes of the public.

We also stated as a principle of the law of libel that "the subject of reasonable comment and fair criticism must be a fact and not a libel"; that it must be the truth and not falsehood. And, in discussing certain pleadings, although we intimated that the defendant would be entitled to an endeavor to prove that the words charged were fair comment and did not in and of themselves constitute libel, we only intended by that to announce a general rule and did not mean that, where the alleged comment and criticism is based upon that which is untrue, it may still be put in as defense. Further, we intimated that fair comment might be put in evidence under the general issue, but, it would seem to be proper practice to plead that defense especially.

Seemingly, the instant case is one of first impression in the jurisprudence of English speaking countries, with, possibly, the exception of *Robinson v. Treadway*, 2 J. J. Marsh. (Ky.) 540, decided in 1829. In many ways it is a case of great import as it affects the constitutional privilege of the right of free speech. The press is the most important single psychological influence in our civilization and determines, at least in part, the conscious thinking and will and conduct of a great multitude of people. Wielding such power and given by the Constitution the right to utter the truth with impunity, still, in the interest of organized

society, that authority, under the guise of fair comment, should not be allowed unjustly to assail the integrity of the bench. And, so, it is the law, that, although publishing the truth, without malice, carries with it immunity from prosecution, publication of that which is false entails liability. Recognizing as we do, therefore, the magnitude of the matters involved, we have considered the issues in this cause with the greatest care.

It is the theory of the plaintiff, that, as he, on May 29, 1913,—pursuant to a petition filed by Rinaker, Cunnea and Haight, who had been, together with Maclay Hoyne, candidates at a general election held November 5, 1912, for the position of State's Attorney—ordered a special venire for special grand jury and allowed the prayer of a petition for the appointment of a special State's Attorney, and appointed one John E. Northrup as special State's Attorney to conduct certain investigations, having special reference to certain alleged frauds and violations of the election law which had been practiced in favor of Maclay Hoyne, the defendant being interested in assisting Maclay Hoyne, wickedly and maliciously published in the newspaper called the Chicago Examiner on June 2, 1913, the defamatory and libelous matter charged in the various counts of the declaration. The theory of the defendant is that the words charged were true and that they were privileged as fair comment and criticism and were published with good motives and for justifiable ends.

The cause was tried before a jury. The trial was protracted, and a large volume of evidence introduced. And, considering the exceptional nature of the issue and that the cause is, practically, one of new impression, it is not surprising that it is now contended that at the trial substantial errors were made, especially in ruling upon proffered evidence.

The following contentions—which we shall consider

seriatim—are made by the defendant:

(1) That the court erred in permitting the plaintiff to file the amended declaration, and in sustaining the demurrer to pleas of the statute of limitations to the amended declaration; (2) that the second count of the amended declaration fails to state a cause of action; (3) that the court erred in excluding evidence offered on behalf of the defendant; (4) that the court erred in admitting, over the objection of the defendant, improper testimony on behalf of the plaintiff; (5) that the court erred in instructing the jury.

(1) Did the court err in permitting the plaintiff to file an amended declaration, and in sustaining the demurrer to the pleas of the statute of limitations to the amended declaration?

At the close of plaintiff's evidence the defendant moved that the jury be instructed to find the defendant not guilty. The defendant made a similar motion concerning each count of the declaration, basing those motions on an alleged variance between the original declaration and the proof.

Thereupon, counsel for the plaintiff asked leave to file an amended declaration. That was objected to, but allowed by the court, and an amended declaration was filed instanter. Concurrently, leave was given the defendant to plead to the amended declaration and, accordingly, the defendant pleaded—to each of the three counts of the amended declaration—the general issue, the statute of limitations and justification; and, also, in addition, a plea of fair comment to the first and third counts. The plaintiff filed *similiters* to the pleas of the general issue; replications to the pleas of justification and fair comment; and demurrers to the pleas of the statute of limitations. The demurrers were sustained. We are of the opinion that the court did not err in permitting the amended declaration to be filed.

In the amended declaration there was added, to the

words charged in the first count of the original declaration, the following:

"Miss Laura Ebel, probation officer of the Juvenile Protective Association, an observer for many years of court dealings with children, made that statement yesterday and then proceeded to tell why she made it, why her own organization and many other welfare bodies are seeking to protect children against Judge Cooper's attitude.

"Miss Ebel declared that her own organization had found it necessary to place a private stenographer in Judge Cooper's court in order that a record might be kept of the many ways in which the court is declared to have favored the defense in such cases.

"Action Held Necessary. The steps taken by the Protective Association in employing a stenographer were without precedent, but it was agreed that they were necessary. Among the prominent men and women who said the stenographer was needed for the sake of a just record were: Mrs. Joseph T. Bowen, Mrs. Charles M. Walker, Mrs. George Dean, Mrs. Harry Hart, Miss Jane Addams, Professor Allen Hoben, Dean Walter T. Sumner, Father Andrew Spots, Rabbi Joseph Stolz, Mrs. Julia C. Lathrop, Judge Harry Olson and Sherman C. Kingsley. All these are executive officials of the Association."

Counsel for the defendant insist that the words just quoted, which were added to those in the original declaration, are "clearly and distinctly libelous" and "actionable *per se* unless privileged," and therefore stated a new cause of action. It will be observed that the first paragraph merely purports to give Miss Ebel as authority for a certain statement and why she and others sought to protect children against Judge Cooper's attitude. In the second paragraph there is what purports to be a statement by Miss Ebel that a certain organization concluded to place a stenographer in plaintiff's court in order to keep a record of the cases where he favored the defense. In the last paragraph there is stated the necessity for the employment

of a stenographer and that a certain number of people, mentioning them by name, said it was necessary "for the sake of a just record." Counsel for the defendant have cited and discussed many cases tending, as it is claimed, to show that the addition of the foregoing paragraphs to the first count of the original declaration made out a new cause of action, and as the statute of limitations had run, the demurrer should have been overruled. We are of the opinion, however, that the amended count did not state a new cause of action. When the amendment was made, the text of the words still conformed to the text of the article published. The first count of the amended declaration was still based upon the same article as the original count; it was published by the same defendant about the same plaintiff, and at the same time and in the same newspaper, and an analysis of the additional words discloses that no new and different libelous imputations are set forth. The reading of the words in the first count of the amended declaration would give rise in the mind of the ordinary reader to identically, practically considered, the same ideas and involve the same imputations and charges as the reading of the words set forth in the first count of the amended declaration. Then, too, judgment on the original count would have been *res adjudicata* in a suit based upon the amended count. We are, therefore, of the opinion that the amended first count did not state a new cause of action.

As to the contention that changes and additions were made in the phraseology of the text set forth in the second and third amended counts, we are of the opinion that they are insubstantial and without merit.

(2) Does the second count of the amended declaration fail to state a cause of action?

It will be observed that facts constituting the trial record of Judge Cooper are not set forth in the par-

ticular text which constitutes the libelous words of the second count; and it follows that any one reading that particular publication would naturally assume that the injurious statements therein made were considered to be sufficiently proven by certain extrinsic facts known to the publisher. It is not as if the article in question had recited what purported to be the trial record of Judge Cooper and had then proceeded, by way of inference and deduction, to make comment thereon, for in such a case the reader of that publication would then be able himself to make inferences and deductions and so determine whether the comment which was actually published was reasonable. In the article in question the reader is merely presented with what, in effect, is a series of dogmatic statements. He is given no opportunity to weigh and balance; he is told bluntly that Judge Cooper is unfit. It may well be said that some of the words and phrases are, technically considered, in the nature of comment upon what is implied in other words in the same publication and that the facts and such comment are so intermingled that it is difficult to disassociate them one from the other. In such a case perhaps the best test is to consider what thoughts the reading of those words would naturally give rise to in the mind of the average person.

It is strenuously contended by counsel for the defendant that the trial court should have submitted the article in question to the jury to determine whether it was fair comment and criticism. In *Parsons v. Age-Herald Pub. Co.,* 181 Ala. 439, 61 So. 345, the court said: "Whether the libel complained of may fall within this rule of privilege is a question of law for the court," etc. Further, in the same opinion, the court said in regard to a certain charge which had been made, "As matter of law, it falls outside of the scope of comment and criticism, as we understand their field of operation," etc. In *Patten v.*

*Harper's Weekly Corporation,* 93 N. Y. Misc. 368, 158 N. Y. S. 70, the court said: "If the charge were true as laid, it would be open to the defense of justification but if asserted to be comment, its appropriateness as such should be dealt with as a question of law." In *Bingham v. Gaynor,* 141 N. Y. App. Div. 301, the court said: "Whether the bounds of fair criticism have been exceeded or not is a question of law for the court."

Applying the foregoing principles, we are of the opinion that the words charged in the second count are, as a matter of law, statements of fact and not comment; and that unless proven to be true they are actionable; and, further, that the trial court should not have submitted to the jury any part of the article in question to determine whether or not it was fair comment.

(3-4)  Did the court err on matters of evidence? That question involves the following: (a) The list of cases identified as defendant's exhibit 2; (b) What transpired in certain other cases tried before the plaintiff; (c) The rejection of the certified copy of the order in the *Morgan* case; (d) Sources of information; (e) Evidence rejected tending to prove facts set up in the alleged libels; (f) Evidence of reputation in the trial of sex cases; (g) The proffer of the remainder of the article entitled, Plaintiff's Exhibit 5-a; (h) The Cooper-Quirk conversation; (i) Subsequent publications.

(a)  The defendant complains that the court erred in refusing to admit in evidence a document prepared by one of the Assistant State's Attorneys and given to the defendant's reporter prior to the publication complained of.  That document purported to be a list of all the sex cases that appeared on Judge Cooper's call while he sat in the criminal court from September until May, together with notations show-

ing what cases were *nolled* or stricken off the call, etc., and the final disposition made of them by him. The reporter Griswold testified that he had obtained that list from the Assistant State's Attorney, and from it checked over the records prior to the publication complained of. That was all the defendant was entitled to. The document itself was not admissible for any purpose. It was clearly in the nature of hearsay. It did not tend to prove the plea of justification, nor was it admissible in mitigation of damages. *Spolek Denni Hlasatel v. Hoffman*, 204 Ill. 532; *O'Malley v. Illinois Pub. & Prtg. Co.*, 194 Ill. App. 544; *Stephens v. Commercial-News Co.*, 164 Ill. App. 6.

(b) The defendant offered to show by the witness, Berger, that there were certain verdicts of guilty and certain new trials granted, and that certain things were done in court at the time certain motions for new trials were discussed. We are of the opinion that the witness should have been allowed to testify as to what transpired in his presence and that of the plaintiff in the court room. Also, as to the *Prince* and *Thompson* cases, any and all evidence offered in regard to what transpired in the trial of those cases was competent as tending to prove justification. It is stated by counsel for the defendant that the trial court apparently excluded such evidence on the ground that these cases were not mentioned in the libels. It is our opinion that in proving justification any overt acts and all conduct on the part of the plaintiff in the trial of sex cases, and any and all evidence submitted before him in such cases was competent.

(c) Exhibit 4 was a certified copy of an order appearing in the record of the *Morgan* case, wherein the defendant was adjudged guilty of the crime of assault with intent to commit rape and sentenced to pay a fine of $5 and no costs. When the defendant offered the certified record in evidence, plaintiff's objection to it was sustained. In our opinion that

was error. The defense of justification may be made out by proof of any facts, whether mentioned or referred to in the publications complained of or not, which go to establish the truth of the statement alleged to be libelous, the special plea of justification being such as to warrant the admission of the evidence offered.

In the special plea of justification to the second and third counts of the amended declaration, the facts shown by the record in the *Morgan* case are specifically pleaded. Until the contrary is established by evidence, we must assume that the facts set forth in that record speak the truth and that they spoke the truth when the defendant's reporter consulted them. That being the case, the certified copy of the record showing the judgment of the court was admissible under the plea of justification and while it may be said that the facts thus shown would not justify any of the statements complained of, if that were the sole justification offered, it was proper for those facts to be shown, and together with all the other facts in evidence submitted to the jury to determine the issue of justification. Inasmuch as the evidence was admissible on the issue of justification, it does not come within the rule urged by the plaintiff that evidence which does not tend to justify but merely tends to cast suspicion is not admissible in Illinois even in mitigation of damages. (*Spolek Denni Hlasatel v. Hoffman, supra.*) The exhibit in question was therefore admissible also on the issue of defendant's good faith and in mitigation of damages. We do not agree with plaintiff's contention that it was not offered for that purpose. While the witness Griswold was on the stand he was asked by counsel for defendant what he had done, if anything, in reference to the records of the criminal court, after he had received defendant's exhibit 2 for identification (the list of cases tried before Judge

Cooper v. Illinois Publishing and Printing Co., 218 Ill. App. 95.

Cooper) and before the publication of June 2. Counsel for plaintiff, in interposing an objection to that question, placed it "on the ground that it is immaterial, irrelevant and incompetent, upon any issue in this case, and that if offered to rebut malice, or in mitigation of damages   *   *   * it is inadmissible on the ground of tending to cast suspicion." There followed some remarks between court and counsel on the question thus presented and the court sustained the objection following which counsel for defendant made the offer of proof with reference to the defendant's exhibit 4 for identification, saying he offered to prove by this witness that prior to the publication of the article of June 2, this witness consulted the records of the criminal court in the case of the *People of the State of Illinois v. Thomas Morgan*, and that he found spread of record an order as set forth in defendant's exhibit 4 for identification, which information he reported to defendant and that it was in the defendant's possession at the time of the publication of the articles in question. That the offer included reference to the issue of good faith and want of malice on the defendant's part, seems to admit of no doubt. It was not necessary that the offer be limited to that issue, as it might have been if it were not admissible on any other issue.

(d) The witness Griswold, for the defendant, testified that before the publication of the article in question he had talked with Mrs. Britton, Miss Ebel, the State's Attorney and some of his assistants. His testimony to that fact was permitted, but the court refused to allow the witness to testify further as to what any of them told him. That was clearly correct, as what was offered was hearsay. The *Spolek Denni Hlasatel v. Hoffman, supra; O'Malley v. Illinois Pub. & Prtg. Co., supra.* According to these authorities, the conversations themselves were inadmissible upon any theory of the defense. Defendant got

all it was entitled to by showing that the witness had made the investigation before publishing the articles.

(e) As to the evidence which was rejected and which tended to prove the facts set forth in the words charged: In the *Smith-Osborne* case, two men were prosecuted under an indictment for rape and indecent liberties. They were found guilty of the latter charge. A motion for a new trial was made, and granted. Witnesses testified that the plaintiff in granting a new trial said that he did so for the reason that the "prosecuting witness's testimony was not corroborated." On the trial of the instant case that testimony was not denied. The defendant offered to prove that a number of witnesses testified in the criminal court case to certain facts which would tend to show corroboration of the prosecuting witness's testimony. That was proper as well as all else that transpired at the trial.

As to the *Loqueroio* case, the court sustained objections to questions put to Miss Ebel, relating to the substance of the testimony by various witnesses at that trial. The testimony, we are of the opinion, was competent on the ground that it is the evidence of the witness as to what actually transpired.

Counsel for the plaintiff argues that the trial court allowed the defendant to introduce any facts mentioned in any of the libels concerning the *Loqueroio* case, which was known to Miss Ebel and Mrs. Britton, and that that was all that was competent. We are not of that opinion. As we have said before, the defendant was entitled to be allowed to introduce the testimony of the witness in question concerning anything and everything that transpired in the actual trial of the case. It is our opinion that an offer of any evidence of what transpired in the trial of any sex case was competent.

It is claimed by counsel for the plaintiff that in every case where the defendant failed to put in what

at least purported to be the substance of all the evidence in any particular sex case the trial judge, on a proper motion, should then exclude all that evidence from consideration by the jury, and contended further that, even all the testimony in any one of such cases, would not be competent. We take it, that is based, in part at least, on the theory that a jury is not entitled to pass upon the fitness or the unfitness of a judge, as a result of their consideration of the quality of his judicial acts in his decision of cases.

And further, it is contended that even where the defendant may have introduced evidence of all of the testimony that was given and all the actual evidence that was admitted in the trial of any one of the sex cases, there yet would be a failure to present to the jury in such a case all that actually transpired at the trial because of the fact that the manner, appearance, accent and all the many effective characteristics of the witnesses were absent. But we are bound to recognize the practical necessities of a trial of this character.

In *Robbins v. Treadway,* 2 J. J. Marsh. (Ky.) 540, a circuit court judge brought suit for libel. The words complained of charged him with want of capacity; an open abandonment of the common principles of truth and a sale of the appointment of a clerk. The court held that asking witnesses the opinions of persons who were not witnesses, in order to prove incapacity, was error. Also, the court held, on the same subject, that the record of a decision by the plaintiff was not legal evidence. On the subject of abandonment of the common principles of truth and a sale of the appointment of a clerk, the court held that any evidence which would prove, or legally conduce to prove, either of those charges would be admissible.

It may be anomalous that it should ever become

Cooper v. Illinois Publishing and Printing Co., 218 Ill. App. 95.

necessary, even in a libel suit such as this, to present
to a jury of laymen the question of the fitness or
unfitness of a judge; but we know of no other method
whereby that subject may properly be litigated be-
tween the parties.   That, then, being the case, we
are bound in such a trial as this to apply the ordi-
nary rules of evidence, and at the same time recog-
nize the difficulties which necessarily beset both the
plaintiff and the defendant when presenting evidence
undertaking to prove the falsity or truth of the al-
leged libel.   If the position of counsel for the plain-
tiff were correct then a judge might be guilty of
flagrant misconduct, violate every law, and yet, if a
newspaper published the actual facts and was then
sued for libel by that judge, practically, there would
be no defense and in such a case the plaintiff would
be entitled to a directed verdict in his favor at the
close of his own case.   Such, of course, is not the
law.

(f)   As to the contention of counsel for the defend-
ant that the court erred in refusing to permit the intro-
duction of evidence concerning the reputation of the
plaintiff in the trial of sex cases prior to June 2, 1913,
the date of the publication of the alleged libelous
words:   The offer was made to show, by evidence of
reputation, as it existed prior to June 2, 1913, that, as
a result of the judicial conduct of the plaintiff in the
trial of sex cases prior to that time, his reputation
as a judge had been impaired.   We are of the opin-
ion that the defendant was entitled, in mitigation of
damages, to put in evidence tending to show that the
reputation of the plaintiff in the trial of sex cases
prior to the time in question had been diminished.
Such evidence would not be competent on the issue
of the truth of the alleged libelous words, but it was
competent to show that the publication in question
was not the sole cause of the impairment of the repu-

tation of the plaintiff as a judicial officer in the trial of sex cases. If his conduct in the trial of sex cases, prior to the time in question, had injuriously affected his reputation, then it cannot be said that the publication of the alleged libelous words was in any way the cause of that injury. The publication of the words charged cannot be said to have injured his reputation as it existed prior to the publication; so that, any evidence of his reputation in sex cases, as it existed prior to June 2, 1913, might tend to mitigate the damages claimed, and should have been admitted. Wigmore on Evidence, vol. 1, sec. 73; *Earley v. Winn*, 129 Wis. 291; *Clark v. Brown*, 116 Mass. 504. The latter case was an action for slander. The words complained of charged the plaintiff with stealing. It was held that the defendant should have been permitted to introduce evidence that the plaintiff's general reputation was bad as to thieving. The court said on page 509: "As he is expected to be always ready to defend his general character, so also he should be ready to defend it in reference to that matter wherein he alleges it to have been wrongfully assailed."

The evidence was clearly admissible. It is charged in the declaration that "it has gone out, and is supposed, that all criminal defendants who are brought to trial before the plaintiff as judge of the Criminal Court of Cook County, and charged with assaults upon women and children, would stand no chance of conviction" and that the plaintiff "protects the criminal defendants and permits them to go free whenever an assault is committed by them on a woman or a girl," and that, by reason thereof, he "has fallen into great discredit and disgrace among the citizens of this county * * * and has been brought into notorious and public disgrace in his official acts as such judge," etc.

(g) The plaintiff introduced exhibit 5a, being the

headlines of the article appearing in the left-hand column of the first page of the issue of May 31, 1913, and the defendant offered in evidence the rest of the article, and also offered, in that connection, the box article appearing in the second and third columns on page 4.

Inasmuch as the rest of the article related to the subject-matter of that which was introduced in evidence, being the headlines, it ought to have been admitted. And, as to the box article, as the words ''Hoyne lists prosecutions thwarted by Judge Cooper,'' which is part of the headlines, are only explained and evidently intended to be explained by a perusal not only of the article in the regular text, but of the box article in the next column, it was admissible. The whole of the article was relevant and the box article was made relevant by the meaning of the headlines which the plaintiff put in. That the plaintiff was endeavoring to show malice, when he offered the headlines, does not change the general rule of evidence; that if a part is introduced, the whole becomes competent, providing it deals with the same subject-matter.

(h) As to the Cooper-Quirk conversation; we are of the opinion that it was competent. The conversation took place between Judge Cooper and the Reporter Quirk at the Newbury Hotel where Judge Cooper lived. It was clearly admissible, as plaintiff's version of it tended to support his theory that they were trying to intimidate him and influence him against impaneling a special grand jury, suggesting that, if he did so, they would publish the sex case articles. We are further of the opinion that the evidence amply justifies the conclusion that Quirk, when he went to interview Judge Cooper, went with authority from the defendant.

(i) The defendant complains of the admission in evidence, over its objection, of two articles and a

cartoon appearing in defendants' papers published on June 4, 6 and 10, 1913. They were introduced by the plaintiff for the purpose of showing actual malice in the publication of June 2, 1913, which latter is the basis of this suit. An examination of the articles and the cartoon shows that they are, in part at least, a reiteration of the charges made in the articles of June 2, 1913. For the purpose of showing actual malice, aggravating the damages recoverable, they were admissible. *Ball v. Evening American Pub. Co.,* 237 Ill. 592.

As to the objections made to rulings on instructions:

It is our opinion that the plaintiff was bound to prove the publication of the words and then, having done that, inasmuch as we are of the opinion that the words are libelous *per se,* the burden was upon the defendant to introduce evidence to show that they were true, and, that being so, it follows that the defendant was not entitled at the close of the plaintiff's evidence to a directed verdict on the ground that the plaintiff had not proven that the words of the libel were false. Inasmuch as the words charged are, in part, statements of fact, and those words are libelous *per se,* there can be no defense of fair comment and criticism. Since we have held that the defense of fair comment and criticism was not available, it follows that the defendant cannot complain of the giving of instruction 37, as it was more favorable to the defendant than the law warranted. This also applies to the latter part of instruction 27, and, of course, to all other instructions given on the subject of fair comment and criticism. With this exception, we see no substantial objections to instructions numbered 17 and 26, except that each states practically the same principle and one or the other may be considered superfluous. And the same is true of instructions numbered 10 and 16.

The words charged being libelous *per se,* there is

no ground for objection to instruction numbered 48.

Complaint is made as to instruction numbered 35 because it singles out certain words of the first count and tends to unduly emphasize the issue thereon, and, further, that if instruction numbered 35 were given there was error in refusing defendant's instruction numbered 4.

Instruction numbered 35 which purports to set forth statements of fact which the defendant was bound to prove true in our judgment is not subject to the objection made.

As to instructions numbered 4, 14 and 19, tendered by the defendant and refused by the court, they were obviously improper, for reasons already stated.

As to instruction numbered 13, tendered by the defendant and refused, that instruction is obviously obnoxious, as where the words are libelous *per se,* exemplary and punitive damages may be allowed even though based only upon implied malice.

For the reasons given the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. PRESIDING JUSTICE THOMSON and MR. JUSTICE O'CONNOR concur.

ADDITIONAL OPINION FILED ON PETITION FOR REHEARING.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

The appellee has filed a petition for rehearing in which is argued, *inter alia,* (1) the rules applicable as to the admissibility of the evidence, (2) whether the evidence admitted and excluded was sufficient to make out the defense of justification, and (3) the ruling of the trial court upon the admissibility of defendant's exhibit 4, and the testimony of the witness Griswold.

(1) We have expressed our opinion to the effect that an offer of any evidence of what transpired at the trial of any sex case tried before the plaintiff was competent. By that we mean, of course, that any such material evidence at the time it is offered is competent providing it is the stated purpose of counsel offering it that at least the substance of what transpired in the course of the particular sex case will be ultimately offered and shown to be material. Of course, the ordinary rule will apply that if the substance of what transpired in the sex case is not, in the end, offered, that which has already been introduced in that particular case should be stricken out, unless, in and of itself, reasonably considered and having in mind the issue, it has some probative force. The defendant not being able to offer all or the substance of what transpired in any sex case all at once, is entitled to offer it in the order which to him seems best. Further, whenever the defendant has concluded the introduction of all or the substance of the evidence in any sex case, and the question arises, upon the motion of counsel for the plaintiff, whether or not that evidence has any tendency whatever to prove the truth of the charges declared upon, it, of course, should be allowed to stand or should be ruled out according to whether or not, in the opinion of the trial judge, it has, considering the issue, any reasonable probative force and at the same time tends to support the theory of the defense.

(2) The plaintiff in his petition for rehearing correctly states that we reversed the judgment in this cause "primarily upon the ground that evidence under the defense of justification was excluded." And, then he contends that in doing so we failed to consider whether all the evidence, both admitted and excluded, was, together, sufficient to make out that defense; that even admitting the truth of all the evidence offered and that excluded, it was insufficient to

Cooper v. Illinois Publishing and Printing Co., 218 Ill. App. 95.

support the defense of justification, and, therefore, the exclusion of certain evidence offered by the defendant on that phase of the case did not injuriously affect it nor constitute material error. In their argument, however, counsel have not pointed out or shown in what particular or in what way that evidence was insufficient to make out a defense. They do argue that it would be no defense, under the plea of justification, that part of the charges made in the libelous article was proved to be true; and that, to be of any avail to the defendant, all the charges must be proved to be true. When that contention is intelligently considered, however, its unsoundness becomes at once manifest. For example, if a libelous article charged a person with having committed a series of ten crimes, nine of which were serious felonies and the tenth, the commission of a mere misdemeanor, and the publisher of the article was sued, and, under a plea of justification, proved the truth of the nine felonies and was unable to prove the truth of the misdemeanor, in such a case we may readily assume that any damages recoverable would be merely nominal. In support of counsels' contention they cite the case of *Ogren v. Rockford Star Prtg. Co.*, 288 Ill. 405, in which the court said (p. 412): "The plea of justification must be as broad as the charge and requires certainty of averment. (17 R. C. L. 400.) It should contain no other averments except the matters justified. If one is guilty of publishing the whole of the alleged defamatory matter, he cannot justify by showing that some part of the defamatory matter, though divisible from the rest, was true. (17 R. C. L. 401.)" When that rule, which, like many similar generalizations, states more than the truth, is not carefully considered it apparently bears out counsels' contention. It needs, however, the following qualification, that where several separate and distinct matters are charged, the defendant may

justify as to one though he fail as to the others. *Lampher v. Clark,* 149 N. Y. 472. In a note to *Rutherford v. Paddock,* 180 Mass. 289, appearing in 91 Am. St. Rep. 291, many cases upon this subject are discussed and their result well stated, is as follows: "The general declaration met with so frequently in the decisions, that the justification must be as broad as the charge, tends to mislead by producing the impression that, unless the defendant can prove the truth of all the charges made by him, it is useless, or even dangerous, to prove any. We apprehend that all that is meant by this general declaration, wherever made, is that nothing less than proof of the whole charge made by defendant can entitle him to a verdict. * * * Where, however, the plea is sufficient to warrant the reception of evidence of the partial truth of the charge, it is admissible to mitigate damages." In the *Lampher* case, *supra,* the court said: "The rule of pleading that the justification shall be as broad as the charge does not mean that the answer in justification must be broad enough to embrace every slanderous charge stated in the complaint. When several separate and distinct things are charged, the defendant may justify as to one though he fail as to the others." In the instant case the libelous articles complained of make certain charges of judicial misconduct against the plaintiff in the trial of sex cases, many of which cases were expressly mentioned. Under these circumstances, if, on the trial, the defendant proves any of the charges to be true, it will have justified, *pro tanto,* that is, as far as those charges are involved.

(3) Defendant's exhibit 4 was admissible under the pleas of justification. It referred to the *Morgan* case, which was particularly pleaded in one of the special pleas of justification. It will not be denied that it would tend to justify defendant's statements here complained of, if it could be shown that the

plaintiff had imposed a fine of $5 upon a defendant found guilty of the crime of assault with intent to commit rape. If the record of the *Morgan* case in the office of the clerk of the Criminal Court was to that effect, defendant was entitled to establish that fact and the proper way to do so was by means of a certified copy of the record. Illinois Statutes, ch. 51, sec. 13 (J. & A. ¶ 5530). If, as the plaintiff claims, the existence of this record was due to a mistake of the clerk, which was subsequently corrected to show that the order which the court really did enter was one imposing a fine of $5 upon a finding of simple assault, those facts might properly be shown in rebuttal, but they would not affect the admissibility of defendant's exhibit 4 at the time it was offered. The records of the court must be presumed to speak the truth. If this record did speak the truth it was competent and material evidence in support of the pleas of justification. As above stated, if the plaintiff could establish, which he claims he could, that it did not speak the truth, that was a right of which he might avail himself upon rebuttal.

A further reason for the admissibility of this evidence is found in the fact that in support of its case plaintiff introduced its exhibit 5a, being the headlines to an article in the Examiner of May 31, 1913. We have held that the balance of that article was admissible in evidence and it was error to exclude it. Within the part of the article which was thus excluded is the following: "A man convicted by a jury of a crime against a woman in Judge Cooper's court will be found by the record to have been fined $5.00." It was proper to substantiate that statement by showing what the record was—even though the plaintiff might be able subsequently to show it was erroneous —by means of defendant's exhibit 4. Furthermore, exhibit 4 having been admitted in evidence, it would be proper for the witness Griswold to testify that he

examined the record of this case in the Criminal Court previous to the publications complained of and that he found the record as set forth in the exhibit referred to.

*Rehearing denied.*